574 A.2d 676

**Mary BAKER, Appellant,**

v.

**MORJON, INC.**

Superior Court of Pennsylvania.

Argued Jan. 23, 1990.

Filed May 3, 1990.

410

Lawrence R. Chaban, Washington, for appellant.
William M. Radcliffe, Uniontown, for appellee.

Before CAVANAUGH, TAMILIA and HESTER, JJ.

TAMILIA, Judge:

This is an appeal from the judgment entered May 3, 1989 against appellant Mary Baker, following an April 17, 1989 Order denying her motion to remove nonsuit. The underlying action, instituted by appellant on September 23, 1985, alleged appellee Morjon, Inc., intentionally caused appellant severe emotional distress by the manner in which Morjon provided for her deceased husband's interment. Specifically, decedent, Michael Baker, and appellant entered into a contract in May, 1983 to purchase two mausoleum crypts from Morjon. Decedent had worked in coal mines and expressed to his family an aversion to underground burial. The agreement entered into provided for temporary underground interment if decedent or appellant, or both, died prior to the mausoleum's completion. When decedent died on October 13, 1983, the mausoleum was not completed, and decedent was temporarily interred underground, as allowed by the purchase agreement, in a wooden coffin selected by the family from the funeral director, Mr. Gordon Greenlee. Appellant was unaware of the temporary interment provi-

sion but it was approved by her son, John Baker. The subsequent factual history as detailed by the trial court is as follows:

In early November of 1983 John Baker told his mother for the first time that Michael Baker was placed underground, causing her to become extremely upset. That same month he requested that the crypt lid be removed so that the condition of the coffin could be examined. On December 27, 1983, this was done, at which time John Baker and [appellant] were present. John Baker noticed moisture under the crypt lid and on the discolored coffin, water on the bottom of the crypt, and a separation of the coffin's seams, all of which he reported to representatives of [appellee] and [appellant]. [Appellant] testified that she observed the discoloration only, even though she was standing some distance from the gravesite during her son's examination of the crypt and coffin. She also stated that she became upset when her son told her of the casket's condition.

Sometime after December 27, 1983, John Baker visited the business office at [the cemetery] for the purpose of determining when his father would be transferred to an aboveground tomb. Although no answer was immediately forthcoming, [appellant] received a call around September of 1984 from a representative of [appellee] advising her that Mr. Baker would be transferred on October 1, 1984, to a newly-completed mausoleum at Sylvan Heights, another cemetery owned by [appellee]. This was done as a courtesy to the Baker family. Present at the appointed time were the plaintiff, John Baker, Gordon Greenlee, [the superintendent of the cemetery] and other employees of [appellee]. Again [appellant] was not within the immediate vicinity of the gravesite and observed nothing relative to the disinterment. However, she became upset when her son John told her of the coffin's dilapidated condition. At Greenlee's funeral home the body of Michael Baker was transferred to a new wooden coffin,

which was gratuitously provided by [appellee] corporation, and then taken to Sylvan Heights.

At the insistence of John Baker, Mr. Greenlee photographed the corpse of Michael Baker. Although [appellant] did not view the photographs, she became upset when she asked Mr. Greenlee how her husband looked, to which he replied, "Not good." By May of 1986, the purchased mausoleum at LaFayette was completed, and Mr. Baker's remains were transferred thereto.

Mrs. Baker testified that as a result of viewing the discoloration of the coffin and statements made to her by her son and Mr. Greenlee regarding the deteriorated condition of the coffin and the corpse, she has become nervous, upset, and dreams of her husband coming to her saying he came "a long way through the water."

(Slip Op., Capuzzi, J., 4/17/89, pp. 2–4) (footnote omitted).

A jury trial was held in the instant action. At the close of appellant's case on the issue of liability, appellee moved for compulsory nonsuit. The trial court granted the motion as a matter of law on the basis appellant's testimony did not "rise to the level of extreme and outrageous conduct." (N.T., 1/19/89, p. 218.) This appeal followed.

On appeal, appellant first argues the trial court erred in granting the motion for compulsory nonsuit, inasmuch as another judge in the same court prior to trial had denied appellee's motion for summary judgment which alleged appellant's complaint failed to state a legally recognized cause of action.

■ Ordinarily, a trial judge should not place himself in the position to overrule a decision by another judge of the same court in the same case. *Salerno v. Philadelphia Newspapers, Inc.*, 377 Pa.Super. 83, 546 A.2d 1168 (1988). The purpose of this rule is to ensure a degree of judicial finality and thereby promote judicial economy and efficiency. *Id.* Its application arises most often in situations where a determination is to be made whether to grant a motion for summary judgment or nonsuit, in both of which

motions plaintiff is given the benefit of all evidence favorable to him, together with all reasonable inferences of fact arising therefrom, and with all conflicts with the evidence resolved in his favor. *West Mountain Poultry Co. v. Gress*, 309 Pa.Super. 361, 455 A.2d 651 (1982). However, these precepts need not be contradictory, nor will they allow refuge to a party against whom judgment is sought where such judgment is the best means to promote judicial economy and efficiency.

In the case at bar, appellant proceeded under a theory of intentional infliction of emotional distress. Restatement (Second) of Torts, § 46. We must, therefore, view the decision of the trial court in light of recent decisions of the courts in Pennsylvania dealing with this cause of action.

The Supreme Court of this Commonwealth declined to adopt section 46 in *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988 (1987), because the Court concluded "if section 46 of the Restatement is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence." *Id.*, 515 Pa. at 195, 527 A.2d at 995. More recently in *Ford v. Isdaner*, 374 Pa.Super. 40, 44, 542 A.2d 137, 139 (1988), this Court said: "*Kazatsky* makes clear that the tort of intentional infliction of emotional distress is not recognized in Pennsylvania. For this reason the complaint in the instant case fails to state a cause of action." *Id.* This finding, however, resulted from a determination that plaintiff failed to satisfy the standards identified in *Kazatsky*, that is, "neither the degree of "outrageousness" in the defendants' conduct nor the nature and extent of the emotional injuries alleged justifies a finding of liability and an award of damages in the instant case." *Id.*, 374 Pa. Superior Ct. at 44, 542 A.2d at 139. *Also see Daughen v. Fox*, 372 Pa.Super. 405, 539 A.2d 858 (1988). This Court, in *Field v. Philadelphia Electric Co.*, 388 Pa.Super. 400, 565 A.2d 1170 (1989), however, held that a worker who was allegedly exposed to high levels of radiation during work for a power company, stated a claim

against the power company for intentional infliction of emotional distress, pursuant to section 46. Distinguishing *Kazatsky* on procedural grounds, the panel in *Field* found that the allegations of the complaint supported a finding that the power company's conduct was both extreme and outrageous and therefore reversed the trial court's grant of a demurrer on the count relating to intentional infliction of emotional distress and held the appellant should be provided with the opportunity to prove that he did seek medical assistance for emotional distress as it determined venting highly radioactive steam upon appellant was extreme and outrageous conduct.

Even were this Court inclined to adopt section 46, appellant has failed to establish the "extreme and outrageous" conduct required for this tort. Comment (d) of the Restatement sets forth the following standard:

*Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts, § 46, comment (d).

Appellee's conduct does not meet this standard of outrageousness. The purchase agreement entered into between the parties allowed for temporary underground interment until completion of the mausoleum. Appellee's awareness, or lack of it, as to decedent's aversion to underground burial becomes irrelevant in light of the contract. We find

the trial court properly granted appellee's motion for compulsory nonsuit and reject this claim by appellant.

■ Appellant next argues the court erred in refusing to allow appellant to testify as to what she was told by other persons concerning the condition of the casket and body unless other witnesses testified as to those matters first. We find this claim without merit, irrespective of appellee's objection being sustained on relevancy or hearsay grounds.

While we have already determined appellant would not prevail in Pennsylvania under a section 46 claim, such a claim would require appellant to have been present at the time of appellee's alleged outrageous conduct. Appellant never saw any of the damage to the casket nor did she see the body. Therefore, statements made to appellant by her son and the funeral director regarding the casket and body were excluded properly on relevancy grounds because they could only corroborate what appellant might have seen had she been present. Likewise, the statements constituted inadmissible hearsay if used to prove the truth of appellee's treatment of the casket and body. Although the statements would be admissible as an exception to the rule against hearsay if used to show appellant's state of mind, the exception would not apply in this case because appellant's state of mind when she learned of the conditions from third persons is not causally related to appellee's alleged tortious acts. We may affirm a decision of the trial court when it is correct on any legal ground without regard to the ground on which the court relied. *Wecht v. PG Pub. Co.*, 353 Pa.Super. 493, 510 A.2d 769 (1986).

■ Appellant's final argument is the court erred in excluding three photographs of decedent's damaged casket taken in October, 1984. However, two other photographs taken the same day were admitted by the court. The admission of photographs is a matter within the sound discretion of the trial court. *Tolbert v. Gillette*, 438 Pa. 63, 260 A.2d 463 (1970); *Berman v. Radnor Rolls, Inc.*, 374 Pa.Super. 118, 542 A.2d 525 (1988). The court determined

the excluded photographs were cumulative, and we find no manifest abuse of discretion in this determination.

Appellant's statement of the questions involved also claims the trial court improperly excluded statements made by employees of appellee concerning decedent's burial. However, as appellant presented no argument in her brief to support this argument, it is waived on appeal.

Judgment affirmed.