414 Pa. Superior Ct. 110 (1992)
606 A.2d 522
SOLCAR EQUIPMENT LEASING CORP., Appellant,
v.
PENNSYLVANIA MANUFACTURERS' ASSOCIATION INSURANCE CO. and Joseph E. and Sandra Kampf and Lazaro S. and Luisa Arocena and Dr. Rodolfo and Thelma Etorma and Dr. Fidel W. and Marlynie Bautista and Theodore and Susan Johansen and Richard and Jacqueline Benz and Frank R. and Madeline T. Micucci and Harry L. and Dorothy Raudenbush and Michael Chwieroth and Morris and Sarah Halper and Adam Cavalier, Jr. and Laraine Reo and Charles Parsons and Patricia Dool and Vallery and Barbara Cummings and Robert E. and Darlene Gattuso and Kevin and Ellen Crawford and Michael C. and Lynda Carol Bartha and Robert and Jacqueline McCleary and Joanne P. and Vincent J. Nicastro and Ellen and Robert Ragan and James T. and Marybeth McStravock and Joseph C. and Patricia A. Bonadonna and Mary Kay and William P. James and Sunder Isaac and R.N. Isaac, H/W Individually and d/b/a Ramex International, Inc. (Two Cases)
Appeal of Frank and Madeline MICUCCI, Harry and Dorothy Raudenbush, Michael Chwieroth, Morris and Sarah Halper and Adam Cavalier and Laraine Reo, and Charles Parsons and Patricia Dool, and Vallery and Barbara Cummings, and Joseph and Sandra Kampf, and Lazaro and Luisa Arocena, and Dr. Rodolfo and Thelma Etorma, and Dr. Fidel and Marlynie Bautista and Theodore and Susan Johansen and Richard and Jacqueline Benz and Robert and Darlene Gattuso and Kevin and Ellen Crawford and Michael and Lynda Bartha and Robert and Jacqueline McCleary, and Joanne and Vincent Nicastro, and Ellen and Robert Ragan and James and Marybeth McStravock, and Joseph and Patricia Bonadonna and Mary and William James.
Superior Court of Pennsylvania.
Argued February 6, 1992.
Filed April 7, 1992.
*112 Stephen W. Edwards, Philadelphia, for appellants.
Phillip J. Meyer, Philadelphia, for appellant (at 781) and for Solcar, appellee (at 1012).
Gerhard P. Dietrich, Philadelphia, for Pa. Mfr. Assoc. Ins. Co., appellee.
Before OLSZEWSKI, JOHNSON and HOFFMAN, JJ.
OLSZEWSKI, Judge:
This is an appeal by Solcar Equipment Leasing Company (Solcar) from an order entered February 13, 1991, in the Court of Common Pleas of Philadelphia County, granting Pennsylvania Manufacturers' Association Insurance Company's (PMA's) motion for summary judgment. In the present appeal, Solcar is pursuing a declaratory judgment action to determine whether its insurance policy with PMA covered damages resulting from Solcar's work. If the policy is held to cover these damages, as both Solcar and the homeowners argue, PMA would be required to defend *113 Solcar in pending law suits in which Solcar was an additional defendant. The facts of this case are as follows.
The underlying action arose from the construction and sale of homes in the Regency Hill section of Philadelphia.[1] Solcar was a subcontractor working for the general contractors, Isaacs and/or Ramex International Inc., on the Regency Hill project. Solcar's job was to pour concrete for the construction of the homes, including concrete walls, footings and windows. (R.R. at 73a.) When the work was completed, three lawsuits, all by homeowners, were brought against Isaacs, alleging that Isaacs and Ramex negligently constructed the Regency Hill homes. Ramex joined the subcontractors, including Solcar, as additional defendants. In its joinder action, Ramex alleged that any damages suffered by the homeowners were because of Solcar's negligence and breach of contract, and that Solcar was obligated under contract to indemnify Ramex against plaintiffs' claims. In turn, Solcar filed a declaratory judgment action, seeking to establish that PMA owed it coverage for the lawsuits under the PMA policy. PMA denied that it owed Solcar any defense or indemnification, because the claims against Solcar for damages in the underlying actions were excluded from coverage. Ramex and the homeowners were included as necessary parties.
After the pleadings were concluded, both PMA and Solcar moved for summary judgment. Though PMA responded, homeowners and Ramex did not respond to the summary judgment motion. Initially, the motion was assigned to Judge Nicholas D'Alessandro of the Philadelphia Court of Common Pleas. The case was continued several times between March and December, 1989, so that the summary judgment motion could be considered. In December, 1989, the case was called to trial before Judge Alfred DiBona. On January 16, 1990, the declaratory judgment arguments for Solcar were heard before Judge DiBona. At that time, the judge was informed of the outstanding summary judgment *114 motion, but the parties agreed to go ahead with trial to bring it to some final conclusion. At this bench trial, the only evidence presented were the relevant insurance contracts and allegations from the pending lawsuits regarding the concrete work. It is worth noting that at this hearing, counsel for Solcar stated that "there are no fact questions in this case and only legal issues regarding insurance coverage..." (Hearing transcript, January 16, 1990, at 1; R.R. at 134a.) Counsel for homeowners stated that they "stood in the same position as Solcar Equipment." (H.T., January 16, 1990, at 14; R.R. at 150a.)
On April 2, 1990, Judge D'Alessandro, who was originally assigned the summary judgment motion in this case, entered an order denying PMA's motion for summary judgment, "without prejudice to the trial judge's right to reconsider the matter at a later stage in the proceedings, if there remain disputed issues of material fact." (R.R. at 121a.)
On February 13, 1991, Judge DiBona filed an opinion and order granting PMA's summary judgment motion, holding
The Court likewise finds no allegations that an "accident" occurred. What has been alleged is improper and and defective workmanship and materials by this plaintiff, Solcar, and others. This conduct has been pled as "negligence", but the claims of negligence and breach of contract must allege an "occurrence" or an accident. Contrary to the position of Solcar, this Court does not classify a claim of lack of structural integrity and breach of contract as an unexpected or unanticipated event within the provisions of the policy.
Trial court opinion at 5-6. Even assuming an occurrence as required by the contracts, the court added, the claims were excluded from coverage because the underlying claims did not contain any allegations that there was property damage other than Solcar's own work product. Id.
From a review of the briefs for Solcar, homeowners, and PMA, it seems that the parties are in agreement regarding the basic allegations contained in the underlying action. All agree that the homeowners allege that the construction *115 "jeopardized the structural integrity of the homes and created a seriously hazardous condition." (Brief for homeowners at 6; brief for Solcar at 5; brief for PMA at 7.) Allegations in the underlying action which concern Solcar's negligence aver: the existence of undersized footings,
19. Defendants, S. Isaac and R.N. Isaac, d/b/a Ramex, planned and constructed all of the homes with foundation footings at a depth of not more than sixteen inches.
20. Defendants, ... knew or by the exercise of reasonable care should have known, that the construction of the homes with foundation footings at a depth of not more than sixteen inches jeopardized the structural integrity of the homes and created a seriously hazardous condition.
(Homeowners' complaint, paragraphs 19 and 20, R.R. at 17a-18a.);
improperly prepared concrete foundations,
40. Defendants ... planned and constructed all of the homes by preparing the concrete foundations improperly.
41. Defendants ... knew or ... should have known that construction of the homes with the concrete improperly prepared would jeopardize the structural integrity of the homes and would create a seriously hazardous condition.
(R.R. at 20a-21a.);
lack of reinforcing rods,
43. Defendants ... planned and constructed the homes without the necessary reinforcing rods in the concrete walls.
44. Defendants ... knew or ... should have known that the construction of the homes without the reinforcing rods jeopardized the structural integrity of the homes and created a seriously hazardous condition.
(R.R. at 21a.); and, failure to adequately waterproof the homes,
46. Defendants ... planned and constructed the homes without the necessary waterproofing.
47. Defendants ... knew or ... should have known that the construction of the homes without the necessary *116 waterproofing jeopardized the integrity of the homes and created a hazardous condition.
(R.R. at 21a-22a.).
Solcar and the homeowners argue that these allegations should survive the summary judgment motion, because they infer that there was property damage to other than Solcar's own work, thus removing it from the policy exclusions. PMA argues that summary judgment was entirely proper in this case because the allegations in the underlying action do not create any inferences which could take it out of the policy exclusions. As damages, plaintiffs in the underlying action request settlement expenses (R.R. at 25a-26a), damages for loss and enjoyment of their properties and ability to sell or transfer the homes (R.R. at 27a), reduced fair market value of the homes to zero (R.R. at 27a), and impossibility that the homes' fair market value will ever increase (R.R. at 27a).
For our review, appellants present a total of four issues.[2] The homeowners pose for our review
1) whether Judge DiBona properly considered PMA's summary judgment motion, when it had been ruled on first by Judge D'Alessandro; and,
2) whether the summary judgment motion was properly granted.
Both Solcar and the homeowners ask us to review
3) whether there was an "occurrence" within the meaning of the PMA insurance contract which would have required PMA to defend and indemnify Solcar; and,
4) whether PMA properly denied insurance coverage because it found the claims set forth to be excluded from *117 coverage.[3]
We will first undertake the summary judgment issues presented by the homeowners. At the outset, we note that the homeowners never objected to Judge DiBona hearing this case. At the bench trial, the parties agreed to proceed in order to finally resolve this matter. (R.R. at 144a.) The first issue concerning the summary judgment motion is whether Judge DiBona was competent to grant the summary judgment motion, when Judge D'Alessandro had previously denied the motion.
We have held that ordinarily, "a trial judge should not place himself in a position to overrule a decision by another judge of the same court in the same case." Salerno v. Philadelphia Newspapers, 377 Pa.Super. 83, 87, 546 A.2d 1168, 1170 (1988). The purpose of this rule is to promote judicial economy and efficiency, and to ensure some measure of pre-trial finality. Id. We have taken note that this rule is applied most often where a determination is to be made whether to grant summary judgment or non-suit, both situations where plaintiff is given the benefit of all evidence in his favor, together with all inferences arising therefrom. Baker v. Morjon, Inc., 393 Pa.Super. 409, 411-13, 574 A.2d 676, 677 (1990). In Baker, we also noted that this rule will not "allow refuge to a party against whom judgment is sought where such judgment is the best means to promote judicial economy and efficiency." Id., 393 Pa.Superior Ct. at 413, 574 A.2d at 678.
In the instant case, the record reveals the testimony upon which Judge DiBona made his ruling, as well as his rationale for ruling as he did, is in the form of an opinion. Such is not the case with Judge D'Alessandro's order denying *118 summary judgment. We do not have the benefit of Judge D'Alessandro's rationale; nor are we a fact-finding entity which is entitled to speculate. As we held in Salerno:
We can discern no reason for prohibiting the consideration and granting of a summary judgment if the record as it then stands warrants such action. This is particularly true when the [previous motion] w[as] denied without an opinion.... Moreover, where, as here, dismissal of the entire complaint on motion for summary judgment is appropriate,[4] preclusion of consideration of the summary judgment motion by application of the rule stated, would have further burdened the parties and the court by requiring them to undergo the time and expense of an unnecessary trial, and thereby thwart the very purpose the rule was intended to serve, i.e. that judicial economy and efficiency be maintained.
Salerno 377 Pa.Super. at 87-88, 546 A.2d at 1170 (citations omitted) (footnote added). Thus we find, as we did in the similar case of Salerno, that a mechanical application of the collateral judgment rule as appellants advocate would be in error. We find that Judge DiBona's ruling was proper. Appellants' first allegation of error cannot succeed.
Second, appellants contend that the grant of summary judgment in this case was erroneous. Once again, we note our standard upon review of summary judgment motions:
Summary judgment is properly granted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law.
Pa.R.C.P. 1035(b), 42 Pa.C.S.A. The moving party has the burden of proving the non-existence of any genuine issue of material fact. Marks v. Tasman, 527 Pa. 132, 589 A.2d 205 (1991). We must view the record in the light most favorable to the non-moving party, resolving against the moving party any doubts as to the existence of a genuine issue of *119 material fact. Id. By applying the standard set forth above, we find that summary judgment was proper in this case.
The crucial issue in this case is whether PMA is obligated to defend and indemnify Solcar for its faulty work. The yardstick for making this determination is the insurance contract entered into by the parties. Both Solcar and homeowners agree that the relevant portions of the insurance contract are the following:
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence. . . .
Occurrence means:
1. an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured, or
2. any intentional act by or at the direction of the insured which results in bodily injury, if such injury arises solely from the use of reasonable force for the purpose of protecting persons or property.
"Property damage" means:
1. physical injury to or destruction of tangible property which occurs during the policy period, including the loss or use thereof at any time resulting therefrom, or
2. the loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
(Brief for homeowners at 10; brief for Solcar at 10-11; trial court opinion at 3-4.) If the averments in the underlying action concerning Solcar's work contain allegations of an occurrence or accident, as we have interpreted those terms, summary judgment was improper. If, as PMA argues, the averments contain nothing more than allegations of negligence, which do not also allege an "occurrence," then summary judgment was proper.
*120 We have addressed the obligations of an insurer toward its insured in the past. This Court has held that:
[I]t is axiomatic that an insurer under a general liability policy has two duties to its insured. The first duty is to defend its insured against claims where the allegations are sufficient to bring those claims under the terms of the policy and the second duty is to pay that which it has agreed to pay in appropriate cases under the terms of the policy. See D'Auria v. Zurich Ins. Co., 352 Pa.Super. 231, 507 A.2d 857 (1986). The duty to defend is however, limited only to those claims covered by the policy, "[t]hus, the insurer owes a duty to defend if the complaint against the insured alleges facts which would bring the claim within the policy's coverage if they were true." Id., 352 Pa.Superior Ct. at 235, 507 A.2d at 859.
Creed v. Allstate Ins. Co., 365 Pa.Super. 136, 139-40, 529 A.2d 10, 11 (1987) (emphasis added). In Creed, we also held that
It must be pointed out that the question of whether a duty to indemnify arises depends upon the type of claim in issue. It should be noted that an inquiry into whether a loss is within policy coverage is a question of law and may be decided by motion for summary judgment.
Id., 365 Pa.Superior Ct. at 140, 529 A.2d at 12 (citations omitted).
Therefore, our responsibility in this case is to examine the substance of the underlying action and determine whether allegations exist which would bring this action under the coverage of the insurance policy. Though we find the circumstances of the instant case to be quite compelling, we agree with the trial court that they do not. Appellants erroneously contend that Solcar's substandard performance, which contributed to massive property damage in the Regency Hill homes, makes this claim a covered one. We are not shocked that Solcar's slipshod construction work caused the homes to be of little value. However, this was not an accident or occurrence, a prerequisite under the insurance contract for reimbursement. Solcar was negligent and nothing more. The insurance contract at issue is not a *121 performance bond or any type of construction malpractice insurance. We find that the trial court was correct in its grant of summary judgment on the pleadings it was confronted with. The homeowners' second allegation of error therefore fails.
Third, we are asked to determine whether there was an "occurrence" in this situation to justify the award of insurance proceeds to Solcar. Though we find that this issue is moot because of our disposition of the homeowners' second argument, we will briefly address it. As stated in the insurance policy, "occurrence" means:
1. an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured, or
2. any intentional act by or at the direction of the insured which results in bodily injury, if such injury arises solely from the use of reasonable force for the purpose of protecting persons or property.
(R.R. at 88a.)
We are guided in our resolution of this issue by our Supreme Court's disposition of this same question. In an interpretation of identical language from an insurance contract, the Supreme Court held that an occurrence does not encompass negligence. Gene v. Harvey Builders v. Pa. Mfrs. Ass'n, 512 Pa. 420, 517 A.2d 910 (1986). In Harvey Builders, the homeowners' complaint alleged that the contractor performed negligently and misrepresented the condition of the home sites to the home buyers. The Court held that these claims were excluded from coverage because they were not occurrences, or fell under policy exclusions. Id., 512 Pa. at 425-27, 517 A.2d at 913.
The trial court in the instant case made the same finding, based on its correct reading of Harvey Builders. We find no error in this ruling. Since there is no personal injury, occurrence or accident alleged in the underlying action, PMA owes no defense or indemnification to Solcar under *122 their insurance contract. Appellants' third allegation of error will not afford them relief.
The fourth contention of error presented for our review is whether coverage was properly denied by operation of paragraphs seven through nine of the insurance policy. Paragraphs seven through nine, detailing exclusions, are as follows:
7.(c) Property damage.
With respect to the completed operations hazard, to property damage to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith;
* * * * * *
(e) to the named insured's product arising out of such products or any part of such products.
8. loss of use of tangible property which has not been physically injured or destroyed resulting from
(a) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or
(b) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance quality, fitness or durability warranted or represented by the named insured;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured;
9. damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the *123 named insured or of any property of which such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.
(R.R. at 83a-84a) (emphasis added).
The policy limitations set forth above are clear and free from ambiguity. These provisions explicitly preclude coverage for "property damage to the named insured's products arising out of such products," and for "loss of use of property from the failure of the named insured's products or work performed ... to meet the level of performance quality ... represented by the named insured." Appellants herein allege property damage to the homes as a result of Solcar's faulty concrete work. Even were we to find an occurrence which would at first blush require PMA to defend, these coverage exclusions preclude finding a duty on PMA's part. Our highest state court, in a factually similar case, held that where the language of the contract is clear and unambiguous, a court is required to give effect to that language. See Standard Venetian Blind Co. v. American Empire Ins., 503 Pa. 300, 305-06, 469 A.2d 563, 566 (1983). For the above reasons, we hold that the policy exclusions in the insurance contract at issue would bar the relief sought by appellants. Their fourth allegation is therefore without merit.
For the foregoing reasons, the order granting summary judgment is affirmed. Jurisdiction relinquished.
NOTES
[1] The claims against Solcar for which it claims coverage are set forth in the complaints filed by the homeowners in the underlying action.
[2] Solcar listed three issues in the "Statement of Questions Involved" section of its Brief, at page 3. However, we find question number one, which involves the refusal of PMA to indemnify and defend, to be waived because the brief contains no argument on this point. Nonetheless, this argument will be addressed by way of the other issues presented, so Solcar will suffer no prejudice from our finding of waiver.
[3] In addition to these four issues, PMA raises a fifth. In its brief, PMA's first question presented is whether the homeowners have improperly attempted to introduce facts not of record. (Brief at 1.) This issue was also the basis of a "Motion to Strike Parts of Homeowners' Brief" filed by PMA. We recognize that matters raised for the first time on appeal are waived and will not be considered; however, the facts which homeowners attempt to introduce, by virtue of our disposition of the remainder of this case, will not benefit it. Therefore, we will not separately address this issue raised by PMA.
[4] See discussion of appellant's second issue, below.