683 A.2d 1226

Antonio N. RICCIO

v.

AMERICAN REPUBLIC INSURANCE CO., Appellant.

Superior Court of Pennsylvania.

Argued June 25, 1996.

Filed Oct. 18, 1996.

Sandy Lannis, Pittsburgh, for appellant.

Charles W. Garbett, Ellwood City, for appellee.

Before CAVANAUGH and JOHNSON, JJ., and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus.

This is an interlocutory appeal as of right from an order granting post-verdict relief in the form of a new trial. *See* Pa. R.A.P., Rule 311(6), 42 Pa.C.S.A. (Interlocutory Appeals as of Right) and *Coker v. S.M. Flickinger Co., Inc.,* 533 Pa. 441, 451, 625 A.2d 1181, 1187 (1993) (all orders granting a new trial are subject to immediate appellate review). We vacate and remand for further proceedings.

On October 16, 1990, plaintiff/appellee Antonio N. Riccio applied for medical insurance with defendant/appellant American Republic Insurance Company. In his insurance application, appellee averred that within the previous ten years, neither he nor any family member had been treated for, diagnosed with, nor experienced symptoms of any type of health condition involving back pain, curvature or disc problems. Unfortunately, two days after completing the insurance application (but before the policy was issued), Mr. Riccio suffered a herniated disc while lifting a pizza oven. *See* Trial Court Opinion dated 10/19/94 at 1.

When the insurance company received appellee's application, it requested his medical records from Ellwood City Hospital. These records included an X-ray of appellee's spine. Based on the medical records, the insurance company issued a policy retroactive to the application date which contained an explicit exclusion for:

> any loss incurred by or for Antonio N. Riccio which results from: hiatal or diaphragmatic hernia, arthritis, *any injury to, disease or disorder of, or treatment of operative repair of the spine,* or ulcer of the duodenum.

Brief on Behalf of Plaintiff filed 10/21/94, Exhibit "A" at 11 (Insurance Policy) (emphasis added). Ten months after appellee injured his back lifting the oven, he submitted medical bills for treatment of the herniated disc to appellant. The insur-

ance company denied benefits based on the language of the policy exclusion. *See* Trial Court Opinion dated 10/19/94 at 2.

Mr. Riccio commenced the action underlying this appeal seeking recovery of the medical expenses. The Honorable Roy A. Gardner, specially presiding, conducted a one-day non-jury trial on September 13, 1994. Judge Gardner entered a verdict in favor of the insurance company on October 20, 1994, and filed an explanatory opinion in conjunction with the written verdict order. Appellee Riccio filed a motion seeking post-trial relief under several different theories. Judge Gardner recused from the case, stating that he was "unavailable" to dispose of appellee's motions because of "scheduling conflicts." *See* Order filed June 15, 1995. The matter was reassigned to the Honorable Ralph D. Pratt. On November 17, 1995, Judge Pratt held that Judge Gardner had applied an incorrect definition for the term "spine" when construing the policy endorsement. Judge Pratt therefore granted Mr. Riccio a new trial on the grounds that the "spinal column ... does not encompass intervertebral discs." Trial Court Opinion filed 11/17/95 at 1.

The instant timely appeal by the insurance company presents four arguments:

1. Whether in a non-evidentiary proceeding on a post-trial motion following a non-jury trial, a coordinate judge who did not try the action has the legal power to reverse the findings of fact and conclusions of law of the trial judge?

2. Whether an exclusion contained in an insurance policy endorsement can be determined to be ambiguous where there is no legal or factual basis for finding such an ambiguity?

3. Whether, under the specific facts of the case, an endorsement to an insurance policy that is written because of a condition of the insured as reflected in a hospital record which the insured has not disclosed can be determined to be so ambiguous as to not exclude a surgical procedure related to the same matter that led to the endorsement?

4. Is an endorsement that excludes "any injury to, disease or disorder of, or treatment or operative repair of the spine" which is written specific to a condition of the insured so ambiguous to not exclude an operative repair of a lumbar disc of the spine, that is the same spinal part that led to the endorsement in the first place?

We cannot resolve the first claim without addressing the essence of issues two, three and four, *i.e.*, whether the language of the exclusionary endorsement to the policy is inherently ambiguous. Therefore we shall consider appellant's contentions as a single claim rather than as four separate arguments.

■ The decision to order a new trial lies within the discretion of the trial court. *Coker,* 533 Pa. at 447, 625 A.2d at 1184. The *standard* for appellate review of this type of order is always whether the lower court committed an abuse of discretion in granting the new trial. *Morrison v. Commonwealth, Department of Public Welfare,* 538 Pa. 122, 131, 646 A.2d 565, 570 (1994). However, the *scope of review* varies depending on whether the trial court cited a finite set of reasons for its decision or left open the possibility that it would have ordered a new trial for reasons other than those it specified. *Id.*

■ If the trial court leaves open the possibility that reasons additional to those specifically mentioned might warrant a new trial or orders a new trial "in the interests of justice," the appellate court applies a broad scope of review, examining the entire record for any reason sufficient to justify a new trial. *Id.* at 131–32, 646 A.2d at 570. However, if the trial court indicates that the reasons it gives constitute the sole basis upon which it ordered a new trial, the appellate court may only examine the stated reasons. *Id.*

It is important to recognize that the trial court's decision whether to grant a new trial rests on its preliminary or predicate decision as to whether any reasons exist for granting a new trial. In other words, there are two levels to a trial court's decision whether to grant a new trial:

> First, the court must determine whether, colloquially speaking, a "mistake" (or mistakes) was made at trial. Second, the court decides whether the mistake (or mistakes) is sufficient basis for granting a new trial. The first decision—whether a mistake was made—may involve factual, legal, or discretionary matters. However, the second and ultimate decision—whether to grant a new trial—is always a discretionary matter because it requires consideration of the particular circumstances of the case.

*Id.* at 133, 646 A.2d at 571 (footnote omitted). An appellate court reviewing the grant of a new trial therefore considers the lower court's ruling at two levels. *Id.* We first examine the trial court's underlying decision as to whether a mistake was made. *Id.* If the trial court articulated a single mistake (or a finite set of mistakes), our review is limited in scope to the stated bases which we must address under the appropriate standard. *Id.* If the trial court's stated reason is grounded upon a discretionary matter, "we are not permitted to distill that basis down to a purely legal question." *Id.* at 133–34, 646 A.2d at 571.

> On the other hand, if a stated reason is purely a question of law, it is reviewed as such. If the appellate court determines that the trial court reached an erroneous decision at this level, then there is no basis for the grant of a new trial and the appellate court may reverse.

*Id.* at 134, 646 A.2d at 571 (footnotes omitted). We note that a new trial should not be awarded because of a mere conflict in testimony or because the reviewing judge in the court of common pleas would have arrived at a different conclusion, based on the same evidence, than the decision reached by the factfinder. *Nudelman v. Gilbride,* 436 Pa.Super. 44, 49–50, 647 A.2d 233, 236 (1994).

 Appellant is correct in stating that judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions. *Commonwealth v. Starr,* 541 Pa. 564, 573, 664 A.2d 1326, 1331 (1995); *Okkerse v. Howe,* 521 Pa. 509, 516, 556 A.2d 827, 831 (1989). This "coordinate jurisdiction rule" is sometimes alternatively expressed in the form "[o]rdinarily, a

trial judge should not place himself [or herself] in the position to overrule a decision by another judge of the same court in the same case." *Baker v. Morjon, Inc.,* 393 Pa.Super. 409, 412, 574 A.2d 676, 677 (1990). The rule is not a matter of jurisdiction *per se;* rather our Supreme Court has explained that it is an expression of sound jurisprudence originally premised on the policy of fostering finality in pre-trial applications thereby promoting judicial economy and efficiency. *Okkerse,* 521 Pa. at 517, 556 A.2d at 831. However, the rule also prevents "judge shopping," a practice which cannot be condoned. *Golden v. Dion & Rosenau,* 410 Pa.Super. 506, 510–11, 600 A.2d 568, 571 (1991) (cited with approval in *Starr, supra*).

■■■ The "coordinate jurisdiction rule" is equally applicable in both civil and criminal settings, and falls within the ambit of the "law of the case doctrine." *Starr,* 541 Pa. at 574, 664 A.2d at 1331. As the *Starr* Court explained, "law of the case"

> refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter. Among the related but distinct rules which make up the law of the case doctrine are that: (1) upon remand for further proceedings, a trial court may not alter the resolution of a legal question previously decided by the appellate court in the matter; (2) upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court; and (3) *upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court.*

The various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy (as does the coordinate jurisdiction rule) but also operate (1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consis-

tency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end.

*Id.* (citations omitted; emphasis added). Departure from the Pennsylvania coordinate jurisdiction rule or the law of the case doctrine is allowed only in exceptional circumstances such as when there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed. *Id.* In this case, Judge Pratt's opinion discloses that he reversed the verdict for one reason only: he concluded that Judge Gardner had issued an erroneous legal ruling premised on what Judge Pratt considered to be an incorrect definition of the word "spine." *See* Trial Court Opinion dated 11/17/95 at 1–2.

As previously stated, the insurance policy at issue contained an exclusionary endorsement applicable to appellee:

This policy provides all the stated benefits except for any loss incurred by or for Antonio N. Riccio which results from: hiatal or diaphragmatic hernia, arthritis, any injury to, disease or disorder of, or *treatment or operative repair of the spine,* or ulcer of the duodenum.

This rider is attached to and forms a part of Policy No. 6145473 issued by American Republic Insurance Company and is countersigned and effective October 16, 1990.

Brief on Behalf of Plaintiff filed 10/21/94, Exhibit "A" at 11 (Insurance Policy) (emphasis added).

In *Jeffrey v. Erie Insurance Exchange,* upon which Judge Gardner relied, an *en banc* panel of this court held that courts must give effect to an insurance policy when its language is "clear and unambiguous." 423 Pa.Super. 483, 489, 621 A.2d 635, 638 (1993) (*en banc* ), *appeal denied,* 537 Pa. 651, 644 A.2d 736 (1994). *Accord Bateman v. Motorists Mutual Insurance Co.,* 527 Pa. 241, 245, 590 A.2d 281, 283 (1991) (citing *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503

Pa. 300, 469 A.2d 563 (1983)). A more recent *en banc* decision of this court further explains:

> The goal of interpreting an insurance policy is to "ascertain the intent of the parties as manifested by the language of the written instrument." *Gene & Harvey Builders v. Pa. Mfrs. Ass'n,* 512 Pa. 420, 426, 517 A.2d 910, 913 (1986) (citation omitted). Where a provision of a policy is ambiguous, the provision is to be construed in favor of the insured and against the insurer, the drafter of the policy. *Id.* When a provision of an insurance policy contains language which is clear and unambiguous, however, a court is required to give effect to that language. *Standard Venetian Blind Co. v. American Empire Ins.,* 503 Pa. 300, 469 A.2d 563 (1983). In order to determine whether a term or language in a policy provision is ambiguous, the term or language must be considered in the context of the entire policy. *Garber v. Travelers Ins. Companies,* 280 Pa.Super. 323, 421 A.2d 744 (1980).

*Madison Construction Company v. Harleysville Mutual Insurance Company,* 451 Pa.Super. 136, 142, 678 A.2d 802, 805 (1996) *(en banc)*.

The Superior Court has repeatedly stated that we will uphold the plain meaning of explicit exclusions contained in an insurance policy. *Id.* A policyholder cannot reasonably expect unlimited coverage in the face of an explicit and unambiguous limitation. *Id.* This is so even when the insured displays a lack of knowledge and/or understanding of a particular endorsement in an insurance liability policy. *Id.* (citing *Standard Venetian Blind, supra* ). An exclusionary clause is enforceable and will effectively preclude coverage as long as the policy language is clear. *Id.*

> A court may not "rewrite" an insurance contract, or construe clear and unambiguous language to mean other than what it says. *Guardian Life Insurance Co. v. Zerance,* 505 Pa. 345, 353, 479 A.2d 949, 953 (1984); *Patterson v. Reliance Insurance Cos.,* 332 Pa.Super. 592, 595, 481 A.2d 947, 949 (1984). An insured will not be heard to complain that his reasonable expectations were frustrated by policy terms

which are clear and unambiguous. *Neil v. Allstate Insurance Co.*, 379 Pa.Super. 299, 311, 549 A.2d 1304, 1309 (1988), [*appeal denied*], 522 Pa. 578, 559 A.2d 38 (1989). Such a provision may only be avoided if it violates public policy. *Tallman v. Aetna Casualty and Surety Co.*, 372 Pa.Super. 593, 595, 539 A.2d 1354, 1355[, *appeal denied*, 520 Pa. 607, 553 A.2d 969] (1988).

*Jeffrey*, 423 Pa.Super. at 489–90, 621 A.2d at 638.

In his "Opinion in Support of Verdict," Judge Gardner ruled that clearly worded and conspicuously displayed exclusions must be deemed effective against an insured:

Plaintiff contends that the above-mentioned spine exclusion does not include his herniated disc operation. Generally, exclusion clauses should be strictly construed. However, under Pennsylvania law, exclusions from coverage contained in [an] insurance policy will be effective against [the] insured if they are clearly worded and conspicuously displayed, irrespective of whether [the] insured read [the] limitations or understood their import.

Trial Court Opinion dated 10/19/94 at 6 (citations and quotation marks omitted). Judge Gardner analyzed testimony the insurance company presented at trial as well as the definitions of "spine" provided in the learned treatises upon which Mr. Riccio relied:

Specifically, the Plaintiff disputes whether the definition of "spine" includes intervertebral discs. Plaintiff uses *Dorlan's Medical Dictionary*'s definition of "spine" as "The vertebral column." (See Brief on Behalf of Plaintiff). The *Attorney's Textbook of Medecine* [sic] makes the statement: "Understanding the normal and pathologic anatomy and physiology of the intervertebral disc requires an appreciation of the relationship between the disc and other structures and its role as a part of the functional unit of the vertebral column." Gordy and Tinney, *The Intervertebral Disc*, 1B Att'ys Textbook Med. 15–7 (1971). By common sense and definition, it is clear that "spine," as used in the instant insurance policy exclusion, includes the intervertebral discs. Furthermore, because the defendant included

the exclusion in a separate paragraph on a separate endorsement page requiring Plaintiff's signature, the exclusion is conspicuously displayed.[1] Thus, the exclusion in the instant insurance policy denies coverage to the Plaintiff for his herniated disc.

*Id.* at 6–7 (footnote added). Judge Gardner does not specifically hold that the term "spine" is "clear and unambiguous" as used in the endorsement at issue here. However, the import of his Opinion in Support of Verdict indicates that Judge Gardner found the term "spine" to be clear and the endorsement enforceable against appellee Riccio on that basis.

In his pre-trial brief, Mr. Riccio presented Judge Gardner with an extract from a learned treatise that provided two definitions for "spine": (1) a "slender, thornlike process of bone" and (2) the "vertebral column." *See* Plaintiff's Pretrial Brief docketed 10/21/94 at 12 (citing *"Dorlans Medical Dictionary* (Shorter Edition 1980)"). Mr. Riccio did not present any evidence at trial as to whether the vertebral column includes the intervertebral discs. However, he did testify that he never read the endorsement. N.T. 9/13/94 at 46–48. Judge Gardner consulted an additional learned treatise, *The Attorney's Textbook of Medicine,* and found that it describes the intervertebral discs as a part of the "functional unit of the vertebral column." *See* Trial Court Opinion dated 10/19/94 at 6. He therefore concluded that if discs are part of the vertebral column, which is a synonym for spine, intervertebral discs must be part of the spine. *Id.*

Mr. Riccio's motion for post-trial relief did not challenge Judge Gardner's interpretation of the word "spine," nor did he object to Judge Gardner taking judicial notice of information contained in *The Attorney's Textbook of Medicine.* However, in the brief he filed approximately five months later, Mr. Riccio incorrectly stated that Judge Gardner possessed no authority for his definition and alleged that the trial judge "overstepped his bounds" in concluding that the spine includes

---

1. At trial, Mr. Riccio acknowledged that the endorsement page appeared to bear his signature, but stated that he could not remember signing it. N.T. 9/13/94 at 46–48.

intervertebral discs. *See* Brief in Support of Plaintiff's Motion for Post-trial Relief filed 3/23/95 at 15. Nevertheless, after citing the definition of "spine" contained in a Webster's dictionary, Mr. Riccio's post-verdict brief reiterates the statement from Dorlan's *Medical Dictionary* that the "spine" is the "vertebral column." *Id.* at 16.

Judge Pratt took over the case at this stage of the proceedings. He disagreed with Judge Gardner's conclusions solely on the following basis:

> Most medical dictionaries define the spine as a sharp process of bone, a definition that includes the spinal column but which does not encompass the intervertebral discs. *See, e.g., Taber's Encyclopedia Medical Dictionary* (F.A. Davis 7th ed.1993); *Stedman's Medical Dictionary* (25th ed.1990); *Mosby's Medical Nursing and Allied Health Dictionary* (Mosby 4th ed.1994); and the *Miller—Keane Encyclopedia and Dictionary of Medicine, Nursing, and Allied Health* (5th ed.1992). Exclusionary language in an insurance policy must be strictly construed against the insurer. *First Pennsylvania Bank, N.A. v. National [Union] Fire Insurance Company*, 397 Pa.Super. 612, 580 A.2d 799 (1990). Accordingly, Plaintiff's Motion for Post–Trial Relief is granted, and Plaintiff is awarded a new trial.

Trial Court Opinion filed 11/17/95 at 1–2. In support of this position, Judge Pratt took judicial notice of several learned treatises not referenced by Judge Gardner.[2] The two judges diverge on the question of whether, as a matter of law, the "vertebral column" includes intervertebral discs. This is precisely the type of situation Pennsylvania law seeks to avoid by providing that, upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee judge should not

---

**2.** Neither judge committed reversible error in this regard. A court may inform itself as to the meaning of a word or an abbreviation by consulting books of authority, including encyclopedias and dictionaries, even when they have not been introduced into evidence. *In re Siemens' Estate*, 346 Pa. 610, 614, 31 A.2d 280, 282 (1943), *cert. denied sub nom. Whitmore v. Pennsylvania Soc. for Prevention of Cruelty to Animals*, 320 U.S. 758, 64 S.Ct. 66, 88 L.Ed. 452 (1943). Courts may also admit such works to aid in the exercise of the judicial function. *Id.*

alter the resolution of a legal question previously decided by the transferor judge. *Starr*, 541 Pa. at 574, 664 A.2d at 1331.

 The interpretation of insurance contracts is a question of law that properly may be decided by the court rather than a jury. *Gamble Farm Inn, Inc. v. Selective Insurance Co.*, 440 Pa.Super. 501, 505, 656 A.2d 142, 143 (1995). The threshold question is whether an ambiguity exists requiring the use of extrinsic evidence. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 200–01, 519 A.2d 385, 390 (1986). A contract is not rendered ambiguous by the mere fact that the parties do not agree upon its proper construction. *Ryan Homes Inc. v. Home Indemnity Co.*, 436 Pa.Super. 342, 346, 647 A.2d 939, 941 (1994), *appeal denied*, 540 Pa. 621, 657 A.2d 491 (1995). An insurance policy provision is ambiguous only if it is "reasonably" susceptible of more than one meaning. *Id.* The challenged language must be considered in the context of the entire policy. *Patterson v. Reliance Insurance Companies*, 332 Pa.Super. 592, 596, 481 A.2d 947, 949 (1984). "Courts should read policy provisions to avoid ambiguities, if possible, and not torture language to create them." *Ryan Homes Inc.*, 436 Pa.Super. at 346–47, 647 A.2d at 941.

As previously discussed, Judge Gardner apparently concluded that the term "spine" was not ambiguous. It is plain that he considered the policy as a whole, as well as the definitions supplied by Mr. Riccio. In this regard, Judge Gardner addressed the nature of the "spine" in a living human being seeking medical treatment pursuant to a health insurance policy and not the definition of "spine" in the context of a skeleton in a medical laboratory. Based on the information in Mr. Riccio's brief and the data in *The Attorney's Textbook of Medicine*, Judge Gardner made the legal determination that the functioning unit of the spine in a living human includes intervertebral discs.

 Whether a trial court has correctly interpreted a writing and properly determined the legal duties which arise therefrom is a question of law for the reviewing court. *Carpenter v. Federal Insurance Co.*, 432 Pa.Super. 111, 117, 637

A.2d 1008, 1011 (1994), *appeal denied,* 540 Pa. 592, 655 A.2d 982 (1995). We agree with Judge Gardner's conclusion that the term "spine," as applied in this health insurance policy, was clear and unambiguous. Under the law of the case doctrine, a transferee trial court judge may not alter the resolution of a legal question previously decided by a transferor judge of coordinate jurisdiction. *Starr, supra.* Thus, it was improper for the transferee judge to order a new trial in this case premised solely on his disagreement with the original ruling as to the meaning of the policy's exclusionary language.

We emphasize that our decision today implicates only the lower court's determinations as to the meaning of the term "spine." We have not considered any of Mr. Riccio's other post-trial issues or the defenses presented by the insurance company since they have not yet been addressed by the trial court. On remand, the lower court must weigh those issues properly raised in the post-trial pleadings and dispose of them in accordance with Pennsylvania law. Today's decision does not preclude the grant of a new trial if that form of relief is required to properly resolve any of Mr. Riccio's open claims. At this time we cannot grant appellee's petition for interest, punitive damages, costs and attorney's fees because we cannot deem the insurance company's appeal to be frivolous or unwarranted.

The order of November 17, 1995 granting a new trial is reversed and the matter is remanded for consideration of Mr. Riccio's remaining post-trial motions. Jurisdiction is relinquished. Appellee's Petition for Interest, Punitive Damages, Costs and Attorney's Fees is denied.

CAVANAUGH, J., concurs in the result.