**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 30 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

MGA INSURANCE COMPANY
INC.,

       Plaintiff-Appellee,

v.

KATHLEEN ESTELLE FISHER-
ROUNDTREE,

       Defendant-Appellant,

  and

CARLTON A. WIGGINS; MARTHA
WIGGINS, individually and d/b/a
Noble Propane Company,

       Defendants.

No. 97-6391
&
97-6414

MGA INSURANCE COMPANY
INC.,

       Plaintiff-Appellee,

v.

CARLTON A. WIGGINS; MARTHA
WIGGINS, individually and d/b/a
Noble Propane Company,

       Defendants-Appellants,

and

KATHLEEN ESTELLE FISHER-
ROUNDTREE,

Defendant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 97-CV-65)**

---

Submitted on the briefs:

Harry A. Parrish of Knight, Wilkerson, Parrish, Wassall & Warman, Tulsa, Oklahoma, for Plaintiff-Appellee.

Gary C. Bachman and J.R. "Randy" Baker of Holloway, Dobson, Hudson, Bachman, Alden, Jennings & Holloway, Inc., Oklahoma City, Oklahoma, for Defendant-Appellant Kathleen Estelle Fisher-Roundtree.

David C. Johnston, Jr., Law Office of David C. Johnston, Jr., P.C., Oklahoma City, Oklahoma, for Defendants-Appellants Carlton A. Wiggins and Martha Wiggins, individually and d/b/a Nobel Propane Company.

---

Before **PORFILIO** , **KELLY** , and **HENRY** , Circuit Judges.

---

**PER CURIAM** .

---

Plaintiff MGA Insurance Company brought this diversity action under 28 U.S.C. § 2201 seeking a judgment declaring that the insurance policy it issued to

-2-

defendants Carlton and Martha Wiggins did not cover the injuries suffered by defendant Kathleen Fisher-Roundtree allegedly caused by the Wiggins' negligence. The district court granted summary judgment in MGA's favor, and defendants appeal. Reviewing the district court's grant of summary judgment and its interpretation of the insurance policy de novo, see Wolf v. Prudential Ins. Co., 50 F.3d 793, 796 (10th Cir. 1995); Houston Gen. Ins. Co. v. American Fence Co., 115 F.3d 805, 806 (10th Cir. 1997), we conclude that the policy does provide coverage and reverse.[1]

The Wiggins own and operate Noble Propane Company, a retail seller of liquified petroleum, or LP, gas located in Noble, Oklahoma. MGA issued them a commercial general liability policy to cover their business operations. On July 17, 1996, Martha Wiggins filled a propane bottle for Fisher-Roundtree and helped Fisher-Roundtree place the bottle in the trunk of her car. After Fisher-Roundtree left the premises, the bottle exploded, injuring her and her property. She brought suit in state court contending that the Wiggins' negligence caused her injuries. The Wiggins tendered the defense of Fisher-Roundtree's suit to MGA and sought indemnification for any damages they might owe her.

---

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. These cases are therefore ordered submitted without oral argument.

MGA thereafter brought this action in federal district court asserting that the policy did not cover Fisher-Roundtree's claim and denying any responsibility to defend the Wiggins. It contended that her claim would fall within the type of coverage provided for completed operations and that this type of coverage had been expressly excluded from the policy. Defendants apparently agreed that Fisher-Roundtree's accident fell within completed operations coverage, but disagreed that the policy excluded this type of coverage. They contended that the policy was ambiguous as to whether it excluded completed operations coverage and that it should be construed in their favor; that the coverage should be read into the policy because it was required by the statute and regulations under which the Wiggins obtained their permit to sell LP gas; that MGA's agent represented to them that the policy satisfied their insurance requirements; and that MGA should be prohibited from denying coverage under the doctrine of reasonable expectations. In granting summary judgment in MGA's favor, the district court concluded that the policy unambiguously excluded coverage for completed operations and that because the policy was not ambiguous, the doctrine of reasonable expectations did not apply. It did not specifically address defendants' other arguments. On appeal, defendants essentially repeat the same arguments they raised in the district court.

We can quickly reject three of defendants' arguments. Their contention that the policy is ambiguous regarding whether completed operations coverage is excluded derives from a certificate of insurance issued under the policy. The column on the certificate showing limits for various types of coverage contains the word "excluded" for completed operations coverage. Defendants contend that this can be reasonably interpreted to mean that the policy includes completed operations coverage and that only the "aggregate limit" for this coverage is excluded. Construing the policy as a whole, see Liberty Mutual Ins. Co. v. East Cent. Okla. Elec. Coop., 97 F.3d 383, 388-89 (10th Cir. 1996) (applying Oklahoma law), we disagree that this is a reasonable interpretation of the policy. The policy contained an endorsement specifically and clearly excluding completed operations coverage. See Appellants' App. at 106. In light of this endorsement, the only reasonable meaning of the certificate is that completed operations coverage is excluded, not that only an aggregate limit is excluded. Defendants' interpretation would require us to "indulge in forced or constrained interpretation[]" to create an ambiguity, which we will not do. Max True Plastering Co. v. United States Fidelity & Guar. Co., 912 P.2d 861, 869 (Okla. 1996). Moreover, as the district court found, this lack of ambiguity defeats defendants' argument that the certificate created a reasonable expectation of coverage to which MGA should be held. See id. at 870 (doctrine of reasonable

expectations applies only where policy is ambiguous or contains technical, obscure or hidden exclusions).

We also reject defendants' argument regarding whether John Imhoff, the insurance agent with whom the Wiggins dealt in buying the policy, was MGA's agent. At most, Imhoff told the Wiggins that they had all the coverage required by law, not that they had coverage for completed operations. Further, defendants cite no Oklahoma authority indicating that even if he were MGA's agent, any representations he made would modify the unambiguous written policy or otherwise bind MGA, and we will not make defendants' arguments for them. See Phillips v. Calhoun, 956 F.2d 949, 953-54 (10th Cir. 1992) (party must support its argument with legal authority).

We now turn to the more difficult issue defendants raise--whether coverage for completed operations should be imposed as a matter of law. The statute and regulations under which the Wiggins obtained their permit to sell LP gas required that they maintain various insurance coverages including coverage for completed operations. Defendants contend that even if, as we have already concluded, the policy language itself does not provide completed operations coverage, coverage should be read into the policy based on the general rule that statutes regarding insurance in effect at the time a policy is negotiated are made part of the policy as a matter of law.

As a general rule,

[a]ll statutes in force at the time the contract or insurance is made (or renewed) will be considered to be part of the contract provided that such statutes bear on the subject matter of the contract and define the rights and liabilities of the parties to the agreement. . . .

[A]ny provision in a policy subject to a particular statute which is in derogation with the explicit terms of the statute or the public policy evidenced by its terms, will be invalid.

Eric Mills Holmes, Appleman on Insurance, § 22.1, Vol. 4 at 366 (2d ed. 1998). It is clear that Oklahoma follows the general rule at least as it applies to statutes directly relating to the issuance of insurance policies. See Shepard v. Farmers Ins. Co., 678 P.2d 250, 251 (Okla. 1983) ("Under Oklahoma law, insurance policies are issued pursuant to statutes, and the provisions of those statutes are given force and effect as if written into the policy."). Like other states, Oklahoma has compulsory insurance laws mandating that, for the benefit of the public, those engaging in particular activities maintain insurance, the most prominent of which requires motor vehicle liability coverage. Thus, Oklahoma courts have readily imputed statutorily required insurance provisions into motor vehicle liability policies where the policies failed to include or conflicted with these provisions. See, e.g., Thomas v. National Auto. & Cas. Ins. Co., 875 P.2d 424, 427 (Okla. 1994) ("[C]learly articulated public policy of our compulsory insurance law plainly overrides contrary private agreements that restrict coverage whenever the contractual strictures do not square with the purpose of the [Financial

Responsibility] Act."); <u>Moon v. Guarantee Ins. Co.</u>, 764 P.2d 1331, 1335 (Okla. 1988) (unless rejected in writing, mandated uninsured motorist coverage "written into policy by operation of law"). The statutes applicable in these situations directly affect the insurance contract. <u>See, e.g.</u>, Okla. Stat. tit. 47 § 7-601.1.A.1 (requiring insurer issuing vehicle proof of insurance form to state that it is issued pursuant to Compulsory Insurance Law); Okla. Stat. tit. 36 § 3636 (requiring all motor vehicle liability policies to provide uninsured motorists coverage, unless insured rejects coverage in writing).

The statute (and regulations) at issue here are somewhat different. To operate the type of LP gas retailing business that the Wiggins have, the Oklahoma LP Gas Act requires businesses to obtain a class VI permit from the Oklahoma LP Gas Administrator. <u>See generally</u> Okla. Stat. tit. 52 § 420.4. As part of the permitting process, LP gas retailers must furnish the Administrator with a certificate demonstrating public liability and property damage insurance coverage. <u>See id.</u> § 420.4.J. The statute allows the LP Gas Board to establish minimum coverage limits, <u>see id.</u>, and for the period in question, the Board established the following insurance requirements for the type of permit the Wiggins have:

> General Liability, Bodily Injury, Property Damage, including products and completed operations liability coverage shall be obtained as follows: $50,000 per occurrence; $50,000 aggregate.

Okla. Admin. Code § 420:10-1-18 (6)(A). Through its agent, MGA issued two certificates of insurance to the LP Gas Administrator for the Wiggins' business in 1995 and 1996.

The insurance requirement at issue here is not as directly applicable to the issuance of an insurance policy as it is to the issuance of a permit for the Wiggins to operate their business; that is, it does not affirmatively impose any coverage requirements directly on the insurer. Without citing any authority, MGA contends that the insurance regulations promulgated by the LP Gas Board therefore should not be made part of the policy as a matter of law, especially where, as it contends is the situation here, the coverage at issue was excluded at the insured's request.[2] However, we see no indication that Oklahoma treats compulsory insurance requirements mandated as part of a permitting scheme any differently from those

---

[2]     Because the procedural posture of this matter is summary judgment, and we therefore construe the facts in defendants' favor, we note that the record does not support MGA's implied contention that the Wiggins affirmatively requested that completed operations coverage be excluded from the policy. The summary judgment evidence shows that the Wiggins did not request completed operations coverage in their application. Although MGA contends that the Wiggins "declined to include that coverage because of cost considerations," Appellee's Br. at 2, the record does not support that contention. MGA does not cite any authority indicating that the failure of an insured to request compulsory coverage affects the determination of whether coverage should be imputed as a matter of law, and we do not consider any factual dispute in this regard material to our analysis.

imposed for motor vehicle liability coverage that are more closely tied to the insurance transaction itself.

"Administrative bodies other than insurance boards may nonetheless have an impact on insurance, as where they mandate that the persons or entities under their authority obtain particular types of insurance coverage." Lee R. Russ & Thomas F. Segalla, Couch on Insurance, Vol. 2 § 19:11 (3d 1997). The Oklahoma Supreme Court has recognized this corollary to the general rule and held that the insurance requirements associated with permitting statutes, including the LP Gas Act, may be incorporated into insurance policies. In Daniels v. Scott, 340 P.2d 223 (Okla. 1959), the issue was whether the insurer who had issued an insurance policy to an LP gas permittee could be joined as a defendant in an action against the permittee for injuries resulting from the permittee's alleged negligence. Relying primarily on cases involving insurance requirements imposed on motor carriers as a condition of engaging in business, the court concluded that under the LP Gas Act, the insurer could be joined. See id. at 225-27; see also Wilson v. District Court, 575 P.2d 112, 114-15 (Okla. 1977) (reaffirming Daniels). In doing so, Daniels quoted from one of the court's earlier motor carrier cases:

> "When a motor carrier files with the Corporation Commission a liability insurance bond as a prerequisite to the issuance to it of a certificate of convenience and necessity, and thereby procures the issuance of such a certificate by the Corporation Commission, neither it nor its liability insurance bondsmen may successfully contend that its bond limits the liability imposed by the statute except as to

amount. When it files its liability insurance bond with the Corporation Commission, the provisions of the statute are read into and become a part of that bond."

"* * * Under the statute the liability insurance bond maker is liable for the injuries resulting from the operation of the motor carrier, not by reason of its bond, but by reason of the statute, after it has filed its bond."

Daniels, 340 P.2d at 226 (quoting Jacobsen v. Howard, 23 P.2d 185, 187 (Okla. 1933)).[3] The court also noted the fact that these types of insurance requirements were compulsory and were imposed as a matter of policy to protect the public. See id. at 226, 227. Moreover, on the basis that the policy could not restrict coverage and liability imposed by law, the court specifically rejected the insurer's argument seeking to give effect to a policy provision prohibiting joinder of the insurer in an action against the insured. See id. at 227; see also Enders, 67 P.2d at 16 ("[T]he bond [required for motor carrier permit] may not contravene the statute, and in case of conflict, the liability distinctly imposed by statute must be performed by the surety.").

Thus, it appears that the Oklahoma Supreme Court views the compulsory insurance requirements of permitting statutes the same as it views those relating to automobiles and the insurance transaction itself; that is, that the statutes are

---

[3]     Although Jacobsen spoke in terms of a bond being provided to the Corporation Commission, the applicable statute was subsequently amended to allow a liability insurance policy to be used instead, with no change in the effect of the statute.    See Enders v. Longmire, 67 P.2d 12, 13-14 (Okla. 1937).

incorporated into the policy as a matter of law and override any conflicting policy provision. Additionally, it does not matter that the specific insurance requirements here are required by regulation rather than statute since there is no question that the regulations were promulgated in accordance with the statute. See Commercial Standard Ins. Co. v. Garrett, 70 F.2d 969, 975-76 (10th Cir. 1934) (noting that "rules and regulations of the [Oklahoma Corporation] commission made in conformity to the statute, had the same force and effect as if they had been incorporated into the statute itself"); see also Appleman, § 22.2, Vol. 4 at 381-82. It also does not matter that the insured did not bargain for and pay the increased premium for the additional coverage imposed by statute, as this is the typical situation in which coverage is imposed as a matter of law. See id. § 22.1, Vol. 4 at 355 ("[M]issing terms required by statute will be read into the policy . . . even though increased liability not reflected in original premium is the consequence.").

We thus conclude that coverage for completed operations must be written into the policy as a matter of law. The question then becomes the amount of coverage to be provided. Defendants contend that it should be the $500,000 per occurrence total provided by the policy. MGA contends that it should be limited to the statutory minimum as opposed to the maximum liability provided by the policy. We agree that under Oklahoma law, coverage is imputed only up to the statutory amount. See May v. National Union Fire Ins. Co., 918 P.2d 43, 48-49

(Okla. 1996); Equity Mutual Ins. Co. v. Spring Valley Wholesale Nursery, Inc., 747 P.2d 947, 953 (Okla. 1987). Therefore, the limit of MGA's liability for completed operations coverage is $50,000 as required by regulation.

The judgment of the district court is REVERSED, and the case is REMANDED to the district court for entry of judgment consistent with this opinion.