**H.E. DAVIS & SONS, INC., a Utah Corporation, Plaintiff,**

v.

**NORTH PACIFIC INSURANCE COMPANY, an Oregon Corporation, and CGU Insurance Group, a Pennsylvania Corporation, Defendants.**

**No. 2:01CV139S.**

United States District Court,
D. Utah,
Central Division.

Aug. 20, 2002.

George M. Allen, Esq., Telluride, CO, for Plaintiff.

John R. Lund, Robert W. Thompson, and Richard A. Vazquez, Snow, Christen-

sen & Martineau, Salt Lake City, UT, for Defendants.

## MEMORANDUM DECISION

SAM, Senior District Judge.

Before the court is a motion for summary judgment submitted by defendant North Pacific Insurance Company. On June 13, 2002, the court heard oral argument on defendant's motion. Present were John R. Lund, Esq., representing defendant, and George M. Allen, Esq., representing plaintiff H.E. Davis & Sons, Inc. The court, having reviewed and carefully considered the parties' briefing and oral presentations, is now prepared to render the following ruling.

## FACTUAL BACKGROUND

The following undisputed facts have been gleaned from the parties' briefing. Plaintiff is a family-owned excavation and paving company headquartered in Spanish Fork, Utah. In 1994 and 1995, plaintiff performed site preparation, fill, and compaction construction for the building of the Spanish Fork Middle School. It did so under a contract with the Nebo School District. Plaintiff completed the work, and Mr. Earl M. Davis, son of founder Harry Davis and now head of the company, was satisfied that the work had been done properly at the time it was completed.

Shortly thereafter, however, it was discovered that the soils placed by plaintiff were not sufficiently compacted. Although it must be presumed that plaintiff had some responsibility for this problem, the central reason for the inadequate compaction appears to be the mistake of the soils engineer in specifying the method and/or standards for the compaction. In a cooperative effort with the school district to solve the problem, plaintiff, at its own cost, removed the offending soils and replaced them with properly compacted material.

Plaintiff notified defendant of the circumstances and demanded that defendant respond. Defendant had issued a commercial general liability insurance policy to plaintiff, including an endorsement that related specifically to the Spanish Fork Middle School project.[1] Defendant sent a claims representative to the site to investigate the problem.

During the course of the initial investigation, defendant corresponded in writing with plaintiff several times and contacted plaintiff by telephone to discuss the ongoing investigation. In September 1995, defendant responded to plaintiff with a letter detailing its investigation, reserving its rights, and denying coverage.

While plaintiff and defendant were involved with insurance coverage issues, a dispute developed between Nebo School District and Gramoll Construction Company, the company hired to build the Spanish Fork Middle School. Gramoll claimed it had suffered substantial damage resulting from Nebo's undue delay in completing the construction of the school building. Ultimately, Gramoll obtained an arbitration award against Nebo.

In February 1999, the Nebo School District notified plaintiff that the district intended to pursue a claim against plaintiff relative to the Spanish Fork Middle School project. Defendant was not informed about and did not independently investi-

---

1. Defendant North Pacific Insurance Company issued the policy in question but was subsequently acquired by defendant CGU Insurance Group. Plaintiff, thus, alleges CGU is vicariously liable for the actions and inactions of North Pacific. North Pacific claims CGU is not a proper defendant but argues that, if North Pacific is entitled to a finding of summary judgment in its favor, then CGU is also so entitled. The term "defendant" in this memorandum decision refers to defendant North Pacific Insurance Company.

gate the factual contentions supporting Nebo's specific claim against plaintiff. Correspondence in the record reveals that defendant confirmed receipt of information from plaintiff about Nebo's claim and began analyzing the insurance policy to make a coverage determination relative to the arbitration award in favor of Gramoll and against Nebo.

Plaintiff brought suit against defendant in this court on March 14, 2000. That suit, however, was voluntarily withdrawn pursuant to a tolling agreement between the parties. After withdrawing suit against defendant, plaintiff reached a settlement agreement with the Nebo School District. Plaintiff claims the cost of the 2000 settlement with Nebo plus the value of its cooperation with Nebo in 1995 total $862,717.00.

Plaintiff now brings suit against defendant claiming: (1) breach of contract, and (2) exemplary damages for willful misconduct. Plaintiff seeks to have defendant pay, as covered losses under plaintiff's insurance policy, costs relative to the following: (1) the removal, replacement, and recompaction of the Spanish Fork Middle School site soil pad; (2) the removal and replacement of concrete footings poured by Gramoll Construction Company at the site; (3) plaintiff's 2000 settlement with the Nebo School District resulting from the arbitration award against Nebo and in favor of Gramoll; and (4) other events, including the possible delay of construction completion. Defendant moves for summary judgment on all of plaintiff's claims.

**2.** Whether a fact is material is determined by looking to relevant substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**3.** In his dissent in *Celotex*, Justice Brennan discussed the mechanics for discharging the initial burden of production when the moving party seeks summary judgment on the ground

## SUMMARY JUDGMENT STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. The burden of establishing the nonexistence of a genuine issue of material fact[2] is on the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two distinct components: (1) an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2727 (2d ed.1983).

When summary judgment is sought, the movant bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record and affidavits, if any, he believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. In a case where a party moves for summary judgment on an issue on which he would not bear the burden of persuasion at trial, his initial burden of production may be satisfied by showing the court there is an absence of evidence in the record to support the nonmovant's case.[3] *See id.* "[T]here

the nonmoving party—who will bear the burden of persuasion at trial—has no evidence:

> Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient. Such a 'burden' of production is no burden at all and would simply permit summary judgment procedure to be converted into a tool for harassment. Rather, as the Court confirms, a party who moves for

can be no issue as to any material fact ... [when] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

Once the moving party has met this initial burden of production, the burden shifts to the nonmoving party to designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

> If the defendant in a run-of-the-mill civil case moves for summary judgment ... based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

*Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary

> summary judgment must affirmatively show the absence of evidence in the record. This may require the moving party to depose the nonmoving party's witnesses or to establish the inadequacy of documentary evidence. If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions,

judgment as a matter of law. *See id.* at 242, 106 S.Ct. 2505.

## DISCUSSION

This case focuses on the language of the commercial general liability insurance policy issued by defendant to plaintiff and whether that policy requires defendant to reimburse plaintiff for the expenses it seeks. "[C]ourts must enforce an unambiguous contract and may not rewrite an insurance contract ... if the language is clear." *Utah Farm Bureau Ins. Co. v. Crook,* 980 P.2d 685, 687 (Utah 1999) (citation omitted). The court addresses several issues relative to the interpretation of plaintiff's policy.

### A. *Was there an "occurrence" to trigger coverage under the Policy?*

The insurance policy specifies that it covers damage caused by an "occurrence". Language relevant to an "occurrence" includes the following: "This insurance applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is *caused by an 'occurrence'* that takes place in the 'coverage territory'". Commercial General Liability Policy (the "Policy"), Memorandum in Support of Defendant's Motion for Summary Judgment, Exhibit B, the 9th page (emphasis added). An "*'[o]ccurrence*' means an *accident,* including continuous or repeated exposure to substantially the same general harmful conditions." Policy, the 19th page (emphasis added). Therefore, policy coverage is triggered only by "bodily injury" and "property damage" caused

> interrogatories and other exchanges between the parties that are in the record. Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party.
> *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (citations omitted).

by an "accident." "Bodily injury" is not an issue in this suit. The Policy does not define "accident".

■ Defendant cites Utah case law and cases from other jurisdictions which generally define an "accident" as something which is *not* a natural or intended consequence and *not* the result of negligence.[4] In *Nova Casualty Company v. Able Construction, Inc.*, 983 P.2d 575 (Utah 1999), the Utah Supreme Court, interpreting a commercial general liability policy containing the *identical* definition of "occurrence" as that in this case, held that negligent misrepresentation is not an "occurrence" or an "accident" under a commercial general liability policy. *See Nova Casualty*, 983 P.2d at 579–80.

Applying *Nova Casualty*, defendant argues plaintiff's inadequate preparation of the soil pad at the construction site was not an "accident" because plaintiff *intended* to perform adequately but apparently did so *negligently*. Thus, regardless of plaintiff's negligence or the ultimate poor quality of its work, plaintiff could *foresee* the natural consequences of its actions. Defendant claims these natural consequences include the removal and replacement of the soil pad and the concrete footings poured by Gramoll Construction. The court agrees. Plaintiff failed to adequately compact the soil, with natural and foreseeable results. So long as the consequences of plaintiff's work were natural,

expected, or intended, they cannot be considered an "accident". If there is no "accident", there is no "occurrence" to trigger coverage under the Policy.[5]

**B.** *Do the damages plaintiff claims constitute "property damage" under the Policy?*

■ Even were the court to find an "occurrence" under the Policy, however, coverage is limited to "property damage" caused by the "occurrence" as "bodily injury" is not at issue in this case. The Policy defines "property damage" as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Policy, the 19th page.

The commercial general liability policy at issue in *Nova Casualty* also defines "property damage" in terms *identical* to those in the pending case. *See Nova Casualty*, 983 P.2d at 580. The court concluded: (1) there is no "property damage" where there is no complete loss of the use of the property; and (2) damages resulting from a loss of business are economic losses

---

4. See, e.g., *Fire Ins. Exch. v. Estate of Therkelsen*, 27 P.3d 555, 559 (Utah 2001)("'the word [accident] is descriptive of means which produce effects which are not their natural and probable consequences"); *accord Fire Ins. Exch. v. Rosenberg*, 930 P.2d 1202, 1205–06 (Utah App.1997).

5. See, e.g., *Swarts v. Woodlawn, Inc.*, 610 So.2d 888, 890 (La.Ct.App.1992)(where policy defines "occurrence" as "an accident", "courts have refused to find an 'occurrence'" when contractor's liability is based only on improper construction); *Solcar Equip. Leas-*

*ing Corp. v. Pa. Mfrs. Ass'n Ins. Co.*, 414 Pa.Super. 110, 606 A.2d 522, 527 (1992)(plaintiff's negligent, "slipshod construction work" is "not an accident or occurrence" under a general liability policy; "[t]he insurance contract at issue is not a performance bond or any type of construction malpractice insurance"); *Hawkeye–Sec. Ins. Co. v. Vector Constr. Co.*, 185 Mich.App. 369, 460 N.W.2d 329, 334 (1990)(defendant's "defective workmanship ... standing alone, was not the result of an occurrence within the meaning of the [commercial general liability] insurance contract").

and not covered "property damage". *See id.* at 580–81.

Defendant points out that, despite the faulty soil compaction at the construction site, there was neither physical injury to the property nor complete loss of the use of the property. Rather, plaintiff's alleged damages result from: (1) the costs to repair and replace its own work product, i.e., the soil pad; and (2) its compensation to Nebo School District for Nebo's liability to Gramoll Construction due to construction delays. Although the school could not be built on the site because the soil was not compacted to specifications, the property itself was not rendered totally useless and could have served other purposes. Likewise, although the concrete footings poured by Gramoll Construction had to be removed in order to repair the soil compaction problem, the footings themselves were not damaged. Furthermore, although plaintiff paid Nebo School District for plaintiff's failure to perform satisfactorily under their agreement, this payment was purely an economic loss due to construction delays and had nothing to do with a physical injury to the property or the loss of the use of the property. The court, again, agrees with defendant that all of plaintiff's damages were foreseeable economic losses, simply arising from its inadequate work, and do not qualify as "property damage". *See, e.g., Aetna Cas. and Sur. Co. v. McIbs, Inc.,* 684 F.Supp. 246 (D.Nev.1988), *aff'd,* 878 F.2d 385 (9th Cir.1989)(costs associated with poor workmanship do not constitute "property damage"). They are, thus, not covered by the Policy.

C. *Even if there were an "occurrence" and "property damage", do plaintiff's claims fall within the Policy's exclusions?*

■ Even assuming there is somehow an "occurrence" and "property damage" under the Policy, it, nevertheless, contains at least two exclusions which, defendant contends, defeat coverage for plaintiff's alleged damages.

The first exclusion, **Exclusion L**, excludes **"Damage to Your Work"** and provides that the following is excluded from coverage:

> "Property damage" to *"your work"* arising out of it or any part of it and included in the *"products-completed operations hazard."*

> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Policy, the 11th page (emphasis added). The Policy, in turn, defines these underlined terms. "Your work" means:

> a. Work or operations performed by you or on your behalf; and

> b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

> a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

> b. The providing of or failure to provide warnings or instructions.

Policy, the 20th page. The Policy defines "products-completed operations hazard" as:

> a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

>> (1) Products that are still in your physical possession; or

>> (2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed....

Policy, the 19th page. Applying Exclusion L, defendant argues the damages plaintiff claims would include "property damage" to "work performed" by plaintiff, i.e., preparation of the soil on the construction site, which "arose" out of plaintiff's work, i.e., insufficient compaction of the soil. Defendant, thus, contends Exclusion L excludes all damages claimed by plaintiff, including costs for removing and replacing the concrete footings, *see, e.g., Jacob v. Russo Builders*, 224 Wis.2d 436, 592 N.W.2d 271, 279 (1999)(costs associated with repairing insured's defective work are derivatively excluded under similar exclusion), because such damages arose directly out of plaintiff's own poor workmanship. *See, e.g., Overson v. United States Fid. and Guar. Co.*, 587 P.2d 149, 150 (Utah 1978)(similar exclusion deemed "clear and unambiguous" and operated to exclude coverage for damages to work performed by insured).

■ The second exclusion, **Exclusion M**, excludes "**Damage to Impaired Property or Property Not Physically Injured**" and provides that the following is excluded from coverage:

"Property damage" to *"impaired property"* or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

Policy, the 11th page (emphasis added). The Policy, in turn, defines "impaired property" as:

"Impaired property" means tangible property, other than "your product" or

"your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

Policy, the 15th page. Defendant contends the concrete footings poured by Gramoll Construction qualify as "impaired property". Therefore, when Exclusion M is applied to the present case, the clear impact is that the cost to plaintiff to remove and replace the footings, due to plaintiff's inadequate soil compaction, is excluded from coverage.

Plaintiff has not addressed the application of Exclusions L and M to the present case. The court agrees with defendant that the clear and unambiguous language of Exclusions L and M prohibits coverage for the damages plaintiff alleges.

D. *Did defendant have a duty to defend plaintiff?*

■ Defendant points out that an insurer has two duties under a general liability policy: (1) to indemnify the insured., i.e., pay amounts for which the insured becomes liable; and (2) to defend the insured against lawsuits. The first three issues addressed in this memorandum decision relate to defendant's duty to indemnify plaintiff. Plaintiff makes no affirmative argument or response to defendant's analysis concerning the meaning of "occurrence" and "property damage" in the Poli-

cy and does not address defendant's interpretation of Exclusion L or Exclusion M. Furthermore, plaintiff does not distinguish defendant's Utah authorities supporting its analysis. Rather, the thrust of plaintiff's argument appears to be that defendant had a duty to defend plaintiff against the claims of Nebo School District and breached it.

In *Fire Insurance Exchange v. Estate of Therkelsen,* 27 P.3d 555 (Utah 2001), the Utah Supreme Court addressed an insurer's duty to defend. The court stated:

> Throughout the United States, as a general rule, an insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint. We have followed this rule in several cases. However, this does not end our inquiry.
>
> The general rule is based on the proposition that an insurer's duty to defend is broader than its duty to indemnify. In other words, an insurer may have a duty to defend an insured even if, as here, the insurer is ultimately not liable to indemnify the insured. However, as the duty to defend arises solely under contract, the accuracy of this proposition hinges on the particular contractual terms of the insurance policy defining the scope of the duty to defend and the duty to indemnify....
>
> If the parties make the duty to defend dependent on the *allegations* against the insured, extrinsic evidence is irrelevant to a determination of whether a duty to defend exists. However, if, for example, the parties make the duty to defend dependent on whether there is actually a "covered claim or suit," extrinsic evidence would be relevant to a determination of whether a duty to defend exists.

*Id.* at 560 and 561 (quotations and citations omitted). Based upon *Therkelsen,* defendant's duty to defend plaintiff depends upon the language in the Policy which defines that duty. Plaintiff claims that "[a]t a bare minimum, during the time after November 10, 1999, North Pacific should have provided a defense while carrying out an analysis of coverage. *Therkelsen* demands no less." Plaintiff's Memorandum in Opposition to Summary Judgment, p. 14. Plaintiff gives no specific cite to *Therkelsen* for this proposition, however, and the court finds none. The Policy in this case provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and *duty to defend the insured against any "suit"* seeking those damages. However, we will have *no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.*

Policy, the 5th page (emphasis added). Under the Policy, defendant has a duty to defend plaintiff against any "suit". A "suit" is defined in the policy as:

> "Suit" means a civil proceeding in which damages because of "bodily injury", *"property damage"*, "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:
>
> a. An arbitration proceeding *in which such damages are claimed* and to which you must submit or do submit *with our consent;* or
>
> b. Any other alternative dispute resolution proceeding *in which such damages are claimed* and to which you submit *with our consent.*

Policy, the 19th page (emphasis added).

The court is of the opinion that defendant had no duty to defend plaintiff against the claims of Nebo School District. Under the Policy, defendant had a duty to

defend plaintiff against a "suit". It is undisputed that Nebo never filed suit against plaintiff.[6] Plaintiff acknowledges there was never any suit but, without any supporting reason, argues that the analysis should somehow "go beyond that." *See* Plaintiff's Memorandum in Opposition to Summary Judgment, pp. 14 and 16. The court sees no need to "go beyond" the language of the Policy. Moreover, although there was an arbitration proceeding, defendant never consented to plaintiff's participation in that proceeding nor did the arbitration proceeding address claims of "property damage" as defined in the Policy. Even if defendant had a duty to defend plaintiff, such a duty would have been limited to claims of "property damage" to which the Policy applied. For the reasons stated above, the court has concluded that there has been neither an "occurrence" nor "property damage" pursuant to the Policy.

**E. Does the "completed operations coverage" apply under the Policy?**

Plaintiff further contends that, regardless of whether Nebo actually filed suit against plaintiff, defendant should have defended plaintiff in its negotiations with Nebo because plaintiff purchased "completed operations coverage" as part of its commercial general liability policy. *See* Plaintiff's Memorandum in Opposition to Summary Judgment, Exhibits 1 and 2 (documents demonstrating plaintiff's purchase of "products-completed operations" coverage).

In the Policy, the "completed operations coverage" is defined as follows: "The Products–Completed Operations Aggregate Limit is the most we will pay under

Coverage A for damages because of 'bodily injury' and '*property damage*' included in the 'products-completed operations hazard'." Policy, the 17th page (emphasis added). The "products-completed operations hazard" is defined as:

a. "Products-completed operations hazard" includes all "bodily injury" and "*property damage*" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed. . . .

Policy, the 19th page (emphasis added).

As with other provisions in the Policy, "completed operations coverage" too is confined to "property damage". Because the court has concluded there has been no "property damage", the "completed operations coverage" does not apply.

Moreover, in *Gibbs M. Smith, Inc. v. United States Fidelity & Guaranty Co.*, 949 P.2d 337 (Utah 1997), the Utah Supreme Court stated that "the 'products completed operations hazard' is not a provision for coverage, but an *exclusion*." *Id.* at 342. Thus, plaintiff's argument appears to be misplaced to the extent it claims the "completed operations coverage" somehow provides *additional* coverage if other terms of the Policy are not met.

**6.** Plaintiff concedes this point. It acknowledges, "No suit had been filed, so there was no Complaint to analyze." Plaintiff's Memorandum in Opposition to Summary Judgment, p. 14. It also states: "[B]ecause the District's claim against Davis was not put in suit, we cannot characterize the nature of the District's claim based on the language of a Complaint." *Id.* at p. 16.

Plaintiff also contends: "[T]he Utah Supreme Court [held] in the *Gibbs M. Smith* case that the completed operations exclusion could not be applied as against a sub-contractor. In our situation, Gramoll is named on the certificate of insurance as an insured and H.E. Davis was, of course, a Gramoll subcontractor." Plaintiff's Memorandum in Opposition to Summary Judgment, p. 17. Plaintiff, thus, seems to be arguing that the "completed operations coverage" does not operate to exclude coverage because it is a subcontractor. The court finds no merit in plaintiff's position. First, the *Gibbs M. Smith* court was interpreting a specific phrase in the policy at issue in that case: "This *exclusion* does not apply if the damaged work or work out of which the damage arises was performed *on your behalf by a subcontractor*." *Id.* at 342 (emphasis added). The court did not hold, as plaintiff seems to claim, that "completed operations coverage" provisions generally do not apply to subcontractors. Second, and most importantly, plaintiff does not and cannot claim that *the work out of which its damages arise was performed on its behalf by a subcontractor.* Plaintiff performed the initial soil compaction, the removal, and the replacement of the soil all by itself.

Apparently convinced the "completed operations coverage" will help its plight, however, plaintiff seems to be arguing that, even if this type of coverage is not a part of the Policy, this court, nevertheless, should construe the Policy to include it. Plaintiff cites *MGA Insurance Company, Inc. v. Fisher–Roundtree,* 159 F.3d 1293 (10th Cir.1998), a case arising in Oklahoma and in which the Tenth Circuit applied Oklahoma law, in support of its claim. The *MGA* court construed an insurance policy which *excluded* "completed operations coverage" as actually *including* this coverage because it was required under an Oklahoma insurance statute. *See MGA,* 159 F.3d at 1297. Plaintiff contends this

court should do likewise because the contracts among plaintiff, Gramoll Construction, and Nebo School District required that there be "completed operations coverage". In contrast to the factual circumstances in *MGA,* however, plaintiff admits there is *no* Utah insurance statute or regulation which specifically demands "completed operations coverage" in commercial general liability policies. Therefore, there is no basis for this court to follow *MGA.* Plaintiff apparently claims that, because Nebo School District is a public body and a subdivision of the Utah government, Nebo's contracts should have the force of law, thus requiring the inclusion of "completed operations coverage". However, plaintiff cites only to Utah Code Ann. § 63–56–40(5), a general procurement statute, as a basis for this court's action. Plaintiff's argument is without merit, and *MGA* is inapposite.

In the end, "completed operations coverage" is "an exclusion that applies only if there is "property damage" pursuant to the Policy. The court has ruled against plaintiff on this issue.

F. *Does defendant's alleged "abandonment" of plaintiff during plaintiff's negotiations with Nebo School District impact the interpretation of the Policy?*

Finally, plaintiff claims that, despite defendant's September 1995 letter denying coverage, defendant somehow had a duty to come to plaintiff's aid when, in February 1999, Nebo School District sought reimbursement from plaintiff to pay the arbitration award in favor of Gramoll Construction Company. Plaintiff contends defendant abandoned it, forcing it to settle with Nebo, despite having possible meritorious defenses. Plaintiff, additionally, attacks the competence of defendant's representative and accuses

defendant of complete inaction, or only a perfunctory response, at a time when plaintiff was under great pressure by Nebo to settle.

The Policy states: "We may, *at our discretion*, investigate *any 'occurrence'* and settle any claim or *'suit'* that may result." Policy, the 5th page (emphasis added). Based upon the Policy's language, the court's view is that defendant had discretion to investigate Nebo's claims, not a duty. The parties point to no language in the Policy specifying how defendant should conduct its investigations. Thus, it appears that, even if defendant chose to do absolutely nothing about Nebo's claims, as plaintiff argues, it would be acting within its discretion. Furthermore, defendant had discretion to consider investigating only if there was an "occurrence" under the Policy. The court has concluded there was no such "occurrence".

## CONCLUSION

Based upon the plain language and interpretations of the Policy, defendant argues convincingly that it had no duty to indemnify or defend plaintiff. Plaintiff has neither established a genuine issue of material fact requiring trial nor presented evidence sufficient for a fair-minded jury to find in its favor. Accordingly, defendant's motion for summary judgment is hereby GRANTED. This case is dismissed with prejudice.