2005 UT App 564

Edward D. GREEN, an individual; and Ed Green Construction, Inc., a Utah corporation, Plaintiffs and Appellees,

v.

STATE FARM FIRE & CASUALTY COMPANY, an Illinois corporation; and State Farm General Insurance Company, an Illinois corporation, Defendants and Appellants.

No. 20040776–CA.

Court of Appeals of Utah.

Dec. 30, 2005.

Ray Phillips Ivie and David N. Mortensen, Ivie & Young, Provo, for Appellants.

Steven B. Smith, Law Offices of Steven B. Smith, Salt Lake City, for Appellees.

Before BILLINGS, P.J., DAVIS, and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

¶ 1 Defendants State Farm Fire & Casualty Company and State Farm General Insurance Company (State Farm) appeal the trial court's grant of summary judgment in favor of Plaintiffs Edward D. Green and Ed Green Construction, Inc. State Farm argues that it had no duty to defend when Plaintiffs were sued by James Ashley Fennell II (Fennell) after a building lot (the Lot) he owned was damaged by a landslide. We reverse.

## BACKGROUND

¶ 2 In 1992, Plaintiff Edward D. Green and his partner, Neil Wall, entered into an agreement to develop twelve acres of land in Layton, Utah. They hired Glen R. Maughan, a soils engineer, to evaluate the condition of the soil and provide a report. Maughan's report indicated a possible risk of landslide on the Lot due to undercutting caused by a creek on the property.

¶ 3 Green and Wall then met with Bill Flanders, an engineer for Layton City, to determine what needed to be done to prepare the land. Flanders required them to level off the grade of the property to improve runoff and cause less stress to the hillside. Flanders subsequently reviewed the soils report and approved the work that had been done on the project. He also determined that Green and Wall had complied with all necessary regulations and requirements to gain approval from Layton City for their proposed Falcon Ridge subdivision (Falcon Ridge).

¶ 4 In May 1995, Fennell contracted with GMW Development, Inc. dba Ivory North (Ivory North) for the purchase and construction of a home on the Lot at Falcon Ridge. Ivory North then acquired the Lot from Green and Wall, built a home on it, and transferred title to Fennell on December 22, 1995.

¶ 5 In the spring of 1998, the Wasatch area experienced significant rainfall. On April 17, 1998, a landslide occurred on the Lot.

¶ 6 At the time of the 1998 landslide, Plaintiffs were insured by a contractor/builder's risk insurance policy issued by State Farm (the Policy). The Policy provided that State Farm would pay those sums that the policy-holder became legally obligated to pay as damages because of bodily injury, property damage, personal injury, or advertising injury to which the insurance applied. Additionally, the Policy required the insurer to defend the insured from any "claim[s] or suit[s] seeking damages payable under the policy."

¶ 7 Fennell subsequently brought suit against Plaintiffs, Wall, and Ivory North for intentional failure to disclose, negligent failure to disclose, and breach of an implied warranty (the Fennell Litigation).

¶ 8 Thereafter, State Farm informed Plaintiffs by letter that it had retained an attorney to defend them against Fennell's claims. In the letter, State Farm reserved the right to deny coverage if the claims in the underlying lawsuit were not covered by the Policy.[1]

¶ 9 State Farm provided Plaintiffs with legal representation in the Fennell Litigation for approximately three and one-half months before determining that the complaint's allegations did not constitute an "occurrence"[2] and, as a result, were not covered by the Policy. Thereafter, State Farm withdrew its legal support.

¶ 10 State Farm's denial of coverage and withdrawal of its representation was based on the following language in Plaintiffs' Policy:

> COVERAGE L—BUSINESS LIABILITY
> We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury to which this insurance applies.... This insurance applies only:
> 1. to bodily injury or property damage caused by an occurrence which

---

**1.** Reasons listed in the letter for excluding coverage included:
    1. It is questionable as to whether this lawsuit involves bodily injury, property damage, personal injury or advertising injury caused by an occurrence.
    2. It is questionable as to whether this lawsuit involves bodily injury or property damage expected or intended from the standpoint of the insured.
    3. It is questionable as to whether this lawsuit involves bodily injury or property damage to any person or property which is the result of willful and malicious acts of an insured.
    4. It is questionable as to whether this lawsuit involves property damage to your work arising out of it or any part of it and included in the products-completed operation hazard.
    5. The Contractor's Policy does not afford coverage for punitive or exemplary damages.

**2.** Plaintiffs' insurance policy defines "occurrence" as: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in *bodily injury* or *property damage*. ..."

takes place in the coverage territory during the policy period;

2. to personal injury caused by an occurrence committed in the coverage territory during the policy period;

3. to advertising injury caused by an occurrence committed in the coverage territory during the policy period.

¶ 11 State Farm's letter to Plaintiffs stated that because "the allegations in the complaint do not fall within the language of the insuring agreement, we must therefore deny defense and indemnity for this claim."

¶ 12 In the Fennell Litigation, Green and his codefendants were granted summary judgment. This court affirmed the summary judgment in *Fennell v. Green,* 2003 UT App 291, 77 P.3d 339, where we determined that (1) Fennell had failed to controvert the defendants' statements of undisputed facts as required by rule 4–501(2)(B) of the Utah Rules of Judicial Administration, *see* Utah R. Jud. Admin. 4–501(2)(B); (2) the undisputed facts established that Wall and Green did not know of a potential landslide "that would impose a duty to disclose"; (3) the economic loss rule "bars recovery for negligent misrepresentation [; and (4) ] Utah law does not provide implied warranties for residential property." *See Fennell,* 2003 UT App 291 at ¶ 20, 77 P.3d 339.

¶ 13 Prior to resolution of the Fennell Litigation, Plaintiffs filed this action against State Farm seeking declaratory relief and compensation for State Farm's bad-faith breach of its duties to investigate, evaluate, and defend them against Fennell's claims.

¶ 14 Following our decision in *Fennell v. Green,* both State Farm and Plaintiffs filed motions for summary judgment on the bad-faith claim Plaintiffs had brought against State Farm. The trial court granted Plaintiffs' Motion for Summary Judgment and denied State Farm's motion. This appeal followed.

## ISSUE AND STANDARD OF REVIEW

¶ 15 The parties agree that the controlling issue in this case is whether the Policy provided coverage for the Fennell Litigation such that a duty to defend was triggered.

¶ 16 This issue was before the trial court on a motion for summary judgment. Rulings on summary judgment motions are reviewed for correctness. *See Fire Ins. Exch. v. Estate of Therkelsen,* 2001 UT 48,- ¶ 11, 27 P.3d 555. " 'Interpretation of the terms of a contract is a question of law. Thus, we accord the trial court's legal conclusions regarding the contract no deference and review them for correctness.' " *Covey v. Covey,* 2003 UT App 380,¶ 16, 80 P.3d 553, 90 P.3d 1041 (Utah 2004), (quoting *Nova Cas. Co. v. Able Constr., Inc.,* 1999 UT 69,¶ 6, 983 P.2d 575) *cert. denied,* 90 P.3d 1041 (Utah 2004).

## ANALYSIS

### I. Fennell's Complaint

¶ 17 We begin by setting forth the Policy's duty to defend provision:

[State Farm] will have the right and duty to defend any claim or suit seeking damages payable under this policy even though the allegations of the suit may be groundless, false or fraudulent. The amount we will pay for damages is limited as described in Limits of Insurance. Damages because of bodily injury include damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury. We may investigate and settle any claim or suit at our discretion. Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses.

¶ 18 Thus, we must determine if the Fennell Litigation sought "damages payable under [the Policy] even though the allegations of the suit may be groundless, false or fraudulent." We disregard the merit of the Fennell Litigation and examine only what it sought to recover and its basis for recovery.

¶ 19 State Farm argues that the allegations in Fennell's complaint do not constitute an "occurrence" under the policy and maintains that, absent an "occurrence," there is no coverage and no duty to defend. A

court "must examine the allegations in the complaint in light of the applicable provisions of the insurance policy to determine if any duty to defend exists." *Nova Cas. Co. v. Able Constr., Inc.*, 1999 UT 69,¶ 8, 983 P.2d 575; *accord Speros v. Fricke*, 2004 UT 69,¶ 50, 98 P.3d 28. The duty to defend exists "[w]hen those allegations, if proved, could result in liability." *Nova Cas. Co.*, 1999 UT 69 at ¶ 8, 983 P.2d 575.

■ ¶ 20 In his complaint, Fennell alleged causes of action for intentional failure to disclose, negligent failure to disclose, and breach of an implied warranty. *See Fennell v. Green*, 2003 UT App 291,¶ 4, 77 P.3d 339. "In determining whether [a complaint's allegations qualify as] an 'occurrence' under the general liability insurance policy, we first look to the policy for guidance." *Nova Cas. Co.*, 1999 UT 69 at ¶ 12, 983 P.2d 575. Hence, we consider the Policy language, which states, in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury to which this policy applies.... This insurance applies only:
>
> 1. to bodily injury or property damage caused by an occurrence that takes place in the coverage territory during the policy period.

¶ 21 Occurrence is defined in Plaintiff's Policy as:

> (a) an accident,[3] including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury or property damage.

¶ 22 To summarize these provisions, State Farm insures and will pay for bodily injury, property damage, personal injury, or advertising injury caused by an occurrence. An occurrence is an accident.

¶ 23 In *Nova Casualty Co. v. Able Construction, Inc.*, 1999 UT 69, 983 P.2d 575, the supreme court examined a similar insurance policy to determine if there was a duty to defend claims against its insured for intentional misrepresentation, negligent misrepresentation, and breach of warranty.[4] *See id.* at ¶¶ 12–18. The court ultimately held that allegations of intentional misrepresentation and negligent misrepresentation in conjunction with the sale of real property do not constitute an occurrence or accident under a commercial general liability insurance policy. *See id.* at ¶¶ 14–16. The court first determined that intentional misrepresentation is a willful misrepresentation, as is fraud, and thus cannot be an accident covered by the policy. *See id.* at ¶ 14. In addressing negligent misrepresentation, the court followed the general approach taken by California courts, explaining that "allegations of negligent misrepresentation are not an occurrence or accident under commercial general liability insurance policies because the insured had the intent to induce reliance." *Id.* at ¶ 16.

¶ 24 The court further explained that

> "[N]egligent misrepresentations causing investment loss or loss of other economic interest are considered purposeful rather than accidental for the purpose of insurance coverage.... The underlying rationale of this rule is that negligent misrepresentation requires *intent to induce reliance* and, therefore, is a subspecies or variety of fraud which is excluded from policy coverage."

*Nova Cas. Co. v. Able Constr., Inc.*, 1999 UT 69,¶ 13, 983 P.2d 575 (second and third alterations in original) (quoting *Richards v. Standard Accident Ins. Co.*, 58 Utah 622, 200 P. 1017, 1023 (1921)).

---

3. State Farm notes that nothing in the insurance policy defines "accident," and directs us to Utah caselaw, which states:

   "[T]he word [accident] is descriptive of means which produce effects which are not their natural and probable consequences.... An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequences of his deeds."

4. The parties treat claims for intentional misrepresentation and negligent misrepresentation as identical to claims in the Fennell Litigation for intentional failure to disclose and negligent failure to disclose, as do we.

*Id.* (quoting *Dykstra v. Foremost Ins. Co.,* 14 Cal.App.4th 361, 17 Cal.Rptr.2d 543, 545 (1993)) (quotations and citations omitted).

¶ 25 In *H.E. Davis & Sons, Inc. v. North Pacific Insurance Co.,* 248 F.Supp.2d 1079 (D.Utah 2002), which cites *Nova Casualty Co.,* the Utah Federal District Court reached a similar conclusion in a case involving a plaintiff's failure to adequately prepare and compact soils for a lot upon which a school was to be built. *See id.* at 1081, 1084. In that case, the defendant insurance company argued that the plaintiff's inadequate preparation of the soil at the building site "was not an 'accident' because plaintiff intended to perform adequately, but apparently did so negligently." *Id.* (emphasis omitted). The court agreed, noting, "Plaintiff failed to adequately compact the soil, with natural and foreseeable results. So long as the consequences of plaintiff's work were natural, expected, or intended, they cannot be considered an 'accident.' If there is no 'accident,' there is no 'occurrence' to trigger coverage under the [p]olicy." *Id.* In other words, action or inaction that is intentional does not constitute an "occurrence."

¶ 26 The opinion in *Nova Casualty Co. v. Able Construction, Inc.,* 1999 UT 69, 983 P.2d 575 (Utah 1999), also briefly disposed of the allegation of breach of warranty, noting that the plaintiffs did not seek recovery for property damage covered by the plaintiff's policy "because it is purely economic loss." *Id.* at ¶ 19. As noted in *Fennell v. Green,* 2003 UT App 291, 77 P.3d 339, Fennell also sought to recover only economic damages, which are not recoverable under Utah law. *See id.* at ¶ 15.

¶ 27 Additionally, other jurisdictions have also found that breach of warranty claims similar to those in the present case do not constitute an occurrence and, consequently, are not covered. *See Yegge v. Integrity Mut. Ins. Co.,* 534 N.W.2d 100, 102–03 (Iowa 1995) (determining that breach of contract and breach of warranty claims did not involve an occurrence); *Hawkeye–Security Ins. Co. v. Davis,* 6 S.W.3d 419, 426 (Mo.Ct.App.1999) ("[B]reach of a defined contractual duty cannot fall within the term 'accident.'" (quotations and citation omitted)).

¶ 28 In the present case, State Farm maintains that because each of the causes of action in the underlying complaint involves an element of intent on the part of Green in causing the damages, none of the causes of action is an occurrence. Accordingly, State Farm argues that Plaintiffs are excluded from coverage under the policy. "'[N]egligent misrepresentations causing investment loss or loss of other economic interest are considered purposeful rather than accidental for the purpose of insurance coverage....'" *Nova Cas. Co.,* 1999 UT 69 at ¶ 16, 983 P.2d 575 (quoting *Dykstra v. Foremost Ins. Co.,* 14 Cal.App.4th 361, 17 Cal.Rptr.2d 543, 545 (1993) (quotations and citations omitted)). Accordingly, we conclude that Fennell's complaint does not include allegations that constitute an occurrence under the Policy. Therefore, Plaintiffs' argument that coverage was triggered under the Policy fails.

## II. Property Damage

¶ 29 Green also argues that State Farm was obligated to defend against Fennell's allegations that Green's failure to disclose defects in the soil caused damage to Fennell's property. Although this argument is related to the breach of warranty claim, we examine it separately under the Policy. The Policy covers "property damage caused by an occurrence." Property damage is:

(1) physical injury to or destruction of tangible property, including all resulting loss of use of that property; or

(2) loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property.

¶ 30 The essence of Fennell's complaint is that he was damaged by Green's failure to disclose. However, it must be conceded that Fennell does not claim that any failure to disclose caused the landslide. Further, we have already concluded that a failure to disclose, whether intentional or negligent, is not an "occurrence" under the policy. Coverage cannot be restored by characterizing the landslide as an "accident" and therefore, an "occurrence" under the Policy, when

the landslide did not result from the failure to disclose, but from other causes. Therefore, State Farm had no duty to defend against Fennell's allegations that Green's failure to disclose caused damage to Fennell's property.

### III. Duty to Defend

■ ¶ 31 Plaintiffs, however, argue that, at the very least, State Farm had a duty to defend them against Fennell's claims. Citing dicta in *Hoffman v. Life Insurance Co. of North America,* 669 P.2d 410 (Utah 1983), Plaintiffs contend that an accident includes results negligently caused by the insured. *Id.* at 416 n. 2. Plaintiffs also refer to investigations by State Farm prior to the filing of this action, where its claims adjuster believed there was possible liability because Green had breached his duty to exercise reasonable care and take reasonable steps to prevent the landslide. Significantly, however, the *Hoffman* court proceeded to explain that, "In insurance law ... the issue is one of contractual meaning, i.e., what is the nature of the risk described by the term 'accident' or 'accidental' that the insurance company insures against." *Id.* at 416. *Hoffman* involved an accidental death insurance policy, not a contractor/builder's risk insurance policy. *See id.* at 413. As mentioned above, a line of Utah cases has clearly distinguished between occurrences and non-covered acts:

> " 'An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds.' "

*Rosas v. Eyre,* 2003 UT App 414, ¶ 25, 82 P.3d 185 (quoting *Fire Ins. Exch. v. Estate of Therkelsen,* 2001 UT 48, ¶ 15, 27 P.3d 555); *accord Nova Cas. Co. v. Able Const., Inc.,* 1999 UT 69, ¶ 13, 983 P.2d 575.

■ ¶ 32 Although it is a general rule that "an insurer's duty to defend is broader than the duty to indemnify," *Sharon Steel v. Aetna Cas. & Sur.,* 931 P.2d 127, 133 (Utah 1997), that duty is not without boundaries. "[T]he insured's obligation is not unlimited; the duty to defend is measured by the nature and kinds of risks covered by the policy and arises whenever the insurer ascertains facts which give rise to the potential of liability under the policy." *Deseret Fed. Sav. & Loan Ass'n. v. United States Fid. & Guar. Co.,* 714 P.2d 1143, 1146 (Utah 1986).

■ ¶ 33 Addressing an insurer's duty to defend, the supreme court has explained, " '[A]s a general rule, an insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint.' " *Estate of Therkelsen,* 2001 UT 48 at ¶ 21, 27 P.3d 555 (quoting 14 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 200:18 (3d ed.1999)).

■ ¶ 34 Applying these principles, we are not persuaded by Plaintiffs' argument that the policy in question should be broadly construed in favor of a duty to defend. "Under Utah law, the scope of the risk an insurance company takes is determined by the terms of the policy, not by the expectations of the insured." *Allstate Ins. Co. v. Patterson,* 904 F.Supp. 1270, 1277 n. 8 (D.Utah 1995). "Absent a finding of ambiguity, we simply construe the policy according to its plain and ordinary meaning." *First Am. Title Ins. Co. v. J.B. Ranch, Inc.,* 966 P.2d 834, 837 (Utah 1998). In the present case, construing the policy according to its ordinary meaning leads us to conclude that, under the unambiguous terms of the Policy, Fennell's complaint did not include allegations that constitute an occurrence under the Policy. The Fennell complaint does not include a claim for simple negligence and therefore is not germane to State Farm's duty to defend or to our analysis. Accordingly, this argument, too, fails.

### CONCLUSION

¶ 35 In sum, because the allegations in the Fennell complaint do not rise to the level of an *occurrence* under the terms of the Policy, State Farm's duty to defend was not triggered. "[D]efendant's duty to defend [P]laintiff[s] depends upon the language in the Policy which defines that duty." *H.E. Davis & Sons v. North Pac. Ins. Co.,* 248 F.Supp.2d 1079, 1087 (D.Utah 2002). Ac-

cordingly, State Farm "had no duty to indemnify or defend [P]laintiff[s]." *Id.* at 1090.

¶ 36 Therefore, we reverse the decision of the district court granting summary judgment in favor of Plaintiffs and remand to the trial court for further proceedings consistent with this opinion.

¶ 37 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and JAMES Z. DAVIS, Judge.